IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| United States of America, | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | No. 1:25-cv-02085-CJN |
| | ) | |
| v. | ) | |
| | ) | |
| All virtual currency held in the BTC-e | ) | |
| operating wallets as of July 25, 2017, and | ) | |
| other assets further described herein | ) | |
| | ) | |
| Defendants *in rem*. | ) | |

**STATUS REPORT**

Plaintiff United States of America ("the Government") respectfully submits this Status Report in accordance with the Court's Minute Order of November 26, 2025.

**A. Background**

The Government filed this case on June 30, 2025 against various assets formerly held by or traceable to the unlicensed cryptocurrency exchange BTC-e, which was widely used for money laundering and other illicit activities. In accordance with Supplemental Rule G(4)(b), the Government provided direct notice of this case to roughly 110 individuals in July and August 2025.[1] Most of these individuals were alleged BTC-e account-holders who had contacted the Government in the years since BTC-e ceased operations in 2017. Consistent with Supplemental Rule G(4)(b)(ii), the direct notice stated that claimants needed to file claims within 35 days of the direct notice and needed to file Answers no later than 21 days thereafter. The Government also provided publication notice of this case, by posting the case to www.forfeiture.gov, beginning on

---

[1] The reason why some direct notices were delayed until August 2025 is that some of the relevant individuals were foreign individuals whom the Government could not contact without first sending Mutual Legal Assistance requests to the host countries.

July 4, 2025 and running for 30 days thereafter. Consistent with Rule G(5)(a)(ii)(B), the publication notice stated that claims were due 60 days from the date of first publication (*i.e.* September 2, 2025) and Answers were due 21 days thereafter. The direct notices and publication notice also explained the remission process and how aggrieved individuals could file remission petitions.

### B. The Government's Position on Late Claims

To establish statutory standing in a civil forfeiture action, a putative claimant must demonstrate that he has complied with the statutory requirements designated by Congress for contesting a civil forfeiture action. *See United States v. 8 Gilcrease Lane*, 641 F. Supp. 2d 1, 5 (D.D.C. 2009). Under 18 U.S.C. § 983(a)(4) and Supplemental Rule G(5), a would-be claimant must, among other things, file a claim within the time periods prescribed by law—which is generally 35 days after receipt of direct notice, or 60 days after the first publication for parties who did not receive direct notice. *See* 18 U.S.C. § 983(a)(4); Supp. R. G(5)(a)(i), G(5)(b); *see also United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 664 F. Supp. 2d 97, 101 (D.D.C. 2009). "Because the procedures prescribed by the Supplemental Rules play an important role in structuring forfeiture suits and ensuring that they proceed efficiently, a court is authorized to strike the claim and/or answer of any claimant who fails to follow the Rules' procedural dictates." *Id.* "Courts generally expect claimants to adhere strictly to those requirements." *Id.*; *see also United States v. All Assets Held in Acct. No. XXXXXXXX*, No. CV 13-1832, 2014 WL 12810522, at *6 (D.D.C. July 3, 2014) ("Courts require 'strict compliance' with these statutory standing requirements."); *United States v. Fifty-Three Virtual Currency Accts.*, No. CV 20-2227, 2025 WL 2732705, at *3 (D.D.C. Sept. 25, 2025) (same).

In response to the Court's questions, the Government responds as follows:

1.      **Government's Position on Late Claims Filed Without Leave**

Under Rule G, the deadline for parties who received notice by publication was September 2, 2025, 60 days after the Government first published notice of this case on www.forfeiture.gov. *See* Supp. Rule G(5)(a)(ii)(B). Moreover, given the press reporting about this case and its prominence among the cryptocurrency community, the Government doubts whether any parties who seek to file late claims at this juncture could *reasonably* claim to have only recently learned of this case. Nevertheless, by the Government's estimation, at least 25-30 claims have been filed after the presumptive Rule G deadline for submission of claims. Although the Government agreed not to oppose the requests of certain claimants to file late claims, others have not sought any such relief and have not set forth any justification for failure to timely file claims. The Government is continuing to examine these late-filed claims to determine whether it will oppose their filing as untimely. The Government notes that late-filed claims not only increase burdens on the Court and Government but also may affect the extent of relief for other claimants who timely filed claims, as well as persons who chose to forego litigation and seek relief through post-forfeiture remission. Indeed, one group of claimants recently and properly told the Court that "given the large number of Claimants already entered in the case and the need for orderly progress, further expansion of the claimant pool would significantly complicate and delay both case management and timely resolution for all existing parties. Undersigned Claimants further submit that they believe continuing to expand the number of claimants in this action is, or may ultimately be, adverse to their interests in this case . . ." Dkt. 289 at 1.

The Government anticipates that it will be able to complete its review of the untimely claims within the next 60 days and determine whether it will seek to strike the claims on timeliness grounds. The Government notes that it may challenge the standing of these and other claimants,

including those who filed claims before September 2, 2025, on additional grounds or seek further information through Special Interrogatories authorized under Supplemental Rule G(6). The Government respectfully requests the opportunity to provide a further status report within the next 60 days to advise the Court of its review of the claims submitted.

2. **Government's Position on Future Requests for Leave to File Late Claims**

The Government intends to oppose as untimely any new claims that may be filed after the date of this Status Report. It has been 161 days since the Government began publishing notice of this forfeiture action and 101 days since the period for filing timely claims based on that notice closed. Untimely claims will prejudice and protract these proceedings because an ever-expanding universe of claimants will delay the Government's evaluation of claims, delay and complicate potential frameworks for settlement, and risk prejudice to claimants who did file on time or people who seek recovery through post-forfeiture remission.

3. **The Court Has Good Cause to Set a Final Cut-Off Date of December 12, 2025 for Receipt of Claims**

The Court's November 26 Minute Order asked "whether it may be appropriate, consistent with Supplemental Rule G(5)(a)(ii) and 'for good cause,' to set a final cut-off date for claims at some point to ensure that this matter can proceed in a timely and organized manner." As stated above, the Government believes that even untimely claims filed before today *may* be strikable on timeliness grounds, but any claims filed *after* today should certainly be deemed *per se* untimely and disallowed. In other words, the Court has good cause to set a *per se* and "final" claims cut-off of today. The Government provided extensive notice of this case, both direct notice and publication notice. There must be finality as to the universe of claimants, particularly since an ever-expanding universe of claimants makes it impossible for the Government to evaluate the claims or suggest a framework for orderly resolution of this case through settlement or litigation. An ever-expanding

4

universe of claimants is also inconsistent with Rule G, which sets claim deadlines precisely so the universe of litigants becomes fixed at an early stage of the case.

### C. Next Steps

The Government proposes that, except for litigation involving Rule G(6) Special Interrogatories, the Court hold further litigation in abeyance for 60 days so the Government can evaluate the claims and determine: (a) whether to seek to strike insufficient or untimely claims; and/or (b) propose settlement of some or all claims. In particular, the Government is currently evaluating the feasibility and desirability of a proposed settlement under which some or all of the seized cryptocurrency might be distributed *pro rata* to claimants and remission petitioners who can show that they were *bona fide* non-criminal accountholders of BTC-e at the time of its dissolution and who have not otherwise received compensation. Evaluating this settlement structure requires that the Government assess the value of claims and remission petitions relative to the size of the recoverable cryptocurrency in this case. This is a time-intensive process, particularly when claims have continued to roll in up to the present day.

The Government proposes that it report back after 60 days regarding its evaluation of claims, progress toward possible resolution/settlement of claims, and/or whether a case schedule should be set for adversarial litigation against some or all claimants.

 

Respectfully submitted,

MARGARET A. MOESER
CHIEF
MONEY LAUNDERING, NARCOTICS
AND FORFEITURE SECTION

*/s/ Joshua L. Sohn*
JOSHUA L. SOHN
Trial Attorney

Money Laundering, Narcotics
And Forfeiture Section
Criminal Division
United States Department of Justice
1400 New York Avenue NW
Washington, DC 20005
Telephone: (202) 353-2223
joshua.sohn@usdoj.gov

*/s/ Catherine Alden Pelker*
CATHERINE ALDEN PELKER
Trial Attorney
Computer Crime and Intellectual Property Section
Criminal Division
United States Department of Justice
1301 New York Avenue NW
Washington, DC 20530
Telephone: (202) 514-1062
catherine.pelker@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 12, 2025, I caused the foregoing document to be served, via CM/ECF, to all counsel of record in this action. I also emailed a copy of this document to all *pro se* parties whose email addresses are readily available.

                                      By:    */s/ Joshua L. Sohn*
                                                     Joshua L. Sohn