UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ALL VIRTUAL CURRENCY HELD IN THE      **Case No. 1:25-CV-02085**
BTC-E OPERATING WALLETS, et al,

      Defendants *in rem*,

1.    JOSEPH BARRETT
2.    MARC ANDRE GUINDON
3.    JUAN MATEO LORENZO
4.    ARON OPTHUN
5.    KIRK OUIMET
6.    MICHAEL BARTH VIK
7.    FELIX CORREA
8.    RADOSLAV BARKA
9.    JOHN BARNES
10.   MARIO CASAR
11.   ZACHARY GLYNN
12.   DANIEL GROVES
13.   OLEKSANDR HARSHYN
14.   BRANDON JUREWICZ
15.   WEIBIN LAM
16.   BRADLEY MARION
17.   MAXIMILIAN PARUSEL
18.   KEVIN TILLBROOK
19.   RYAN UNDERWOOD
20.   DAVID WEEKS
21.   LENNART MATTIAS WERNER
22.   ALEKSANDR LINENKO
23.   BRUCE TIEMANN
24.   KAZJIN YASIN SALIH
25.   BENJAMIN JAMES MORAN
26.   PAUL RHODES
27.   ALDIS RIGERTS
28.   ERIC SANDRI
29.   NIKOS VERSCHORE

      Claimants.

_____/

**CAPTIONED CLAIMANTS' OPPOSITION TO REQUEST FOR FURTHER STAY**

Some background is necessary. In July *2017*, in the Northern District of California, Plaintiff instituted a criminal prosecution of Alexander Vinnik and his associates who ran the online crypto currency exchange BTC-e, taking down the platform, and seizing, for criminal forfeiture, "Defendant Property A": cryptocurrency from "BTC-e's operating wallets." In 2019, Plaintiff obtained (in ND Cal) a seizure warrant for "Defendant Property B", fiat currency located in New Zealand from an alleged shell company utilized in BTC-e's operations, and (in 2021) for "Defendant Property E", funds in a "BTC-e shell company" account at a Czeck bank.

The 29 responding Claimants were ordinary, innocent consumer depositors of BTC-e, individuals from around the world who simply placed their own funds on BTC-e to trade cryptocurrency, believing, in the relatively early days of cryptocurrency, the site was legitimate. They are not accused of wrongdoing, and are *victims* of criminal conduct Plaintiff prosecuted.

Though it could have chosen both civil and criminal forfeiture simultaneously (18 U.S.C. § 983(a)(3)(C)); *see also, e.g.* 18 U.S.C. § 981(g)(3) (authorizing stay of civil forfeiture when civil discovery harms criminal prosecution), Plaintiff for years only pursued criminal forfeiture, seeking to forfeit Vinnik's interest in the seized funds.  In early 2025, Vinnik was set to plea, and under 21 U.S.C. § 853 the Government would have presumably moved for a preliminary order of forfeiture as to the now Defendant properties, and would have had to address with that Court at least 50-100 third party ancillary petitions from individuals like and including Claimants. But Vinnik was "prisoner swapped" for an American held in Russia, his criminal prosecution dismissed by February 2025, and with it, any forfeiture action of the now Defendant funds. Claimants were left with no recourse to reclaim their innocent money, having been deprived it for, then, already over 7 years.

1

Months later, on June 30, 2025, notwithstanding that civil forfeiture actions must be filed within 5 years of the government's discovery of the offense (19 USC § 1621), Plaintiff filed its complaint for forfeiture *in rem* against the various Defendant properties (Defendant Properties A, B, C, D, & E), instituting this action. Claimants promptly filed claims opposing forfeiture to enter this case. Claimants' counsel immediately engaged Plaintiff's counsel, in an attempt to expedite resolution and return of Claimants' innocent property.

Claimants' counsel met in person with Plaintiff's counsel in Washington, D.C. in September 2025 and, based on the meeting, submitted a detailed memorandum which proposed a framework for an informal resolution – a pro rata distribution of the Defendant property to timely individual claimants based on their respective holdings at the time of seizure, and asked the government to clarify its intentions as to Defendant properties located in foreign countries, confirm that it would seek to exclude the Mt. Gox Trustee claimant from the case, [1] and provide verification of Claimants account balances at the time of seizure.

Plaintiff, in other forums, has indicated that "[l]aw enforcement maintains a copy of the BTC-e server as a result of law enforcement's 2017 seizure of the BTC-e server." (*USA v. Appx. 30,006 ETHER, et al.*, Case No. 2:23-cv-21819 (D. N.J. Nov. 2, 2023), Complaint, Doc. 1 at 47 & fn. 8). Plaintiff confirmed in the New Jersey case and has confirmed in this case that it can ascertain users' historical activity on BTC-e. The February 10, 2026 Status Report cited cross-currency trading complexity as an obstacle to completing its calculating of account balances and requested a 60 day blanket stay of the case. The March 31, 2026 Status Report

---

[1] Unlike Claimants, Mt. Gox is not an individual user of BTC-e who had an accessible amount of funds on deposit with BTC-e in July 2017. Rather, in 2011, after Mt. Gox was apparently hacked, the hackers sent a large amount of Mt. Gox's Bitcoin through BTC-e to "obscure their ultimate destination." In other words, Mt. Gox never had an account with which it could access or use funds held by the BTC-e platform, and had no funds at BTC-e in 2017.

offers the same rationale and requests another 60 days, and adds that Plaintiff is engaging with counsel for Mt. Gox, informally sharing information and evidence.

Responding Claimants' counsel has maintained regular contact with Plaintiff's counsel, and have sought the aforementioned information (account balance verification, position on pro rata distribution, information regarding foreign asset retrieval, and confirmation of intent to exclude Mt. Gox from the distribution) which Claimants submit is the minimum necessary to make any initial progress toward a stipulated resolution in this case.  None of Claimants' account records have been produced by Plaintiff, Plaintiff has not committed to any type of resolution framework, and Plaintiff has not committed to a position as to Mt. Gox. Plaintiff has also suggested it will not seek to gain custody of Defendant Properties B-E, properties apparently currently located in foreign countries, despite having obtained seizure warrants as to some of those properties and instituted this forfeiture action against them here.

Meanwhile, (responding) Claimants' have been informed that other individual claimants have received from Plaintiff at least some BTC-e records that presumably reflect or bear on those claimants' BTC-e holdings in July 2017. Further, Plaintiff specifically indicates that "[s]ince the February 27 [2026] meeting, Mt. Gox counsel and Government counsel have traded information and evidence …" that bears on whether any of Mt. Gox funds remained at BTC-e in July 2017. Doc. 340 at 1. Plaintiff's status reports confirm that it has begun the process of ascertaining some of the claimants account balances, having specifically determined that "some … conducted staggering amounts of cross-currency trading[,]" including that "one of the claimants in this case conducted more than 1,700 cross-currency trades[.]" Doc. 328 at 2.

Yet, with regard to (responding) Claimants, Plaintiff declines to provide any records informally and maintains that discovery would be "intrusive" and an undue "burden" while

3

Plaintiff is "spending its resources on trying to ascertain whether some or all of this case can be resolved without costly litigation." Doc. 328 at 3. Claimants take issue with this. Plaintiff seized innocent people's money 8 years ago and has known since spring of 2025 that its obligation to account for innocent owners would imminently vest. The very filing of this case in this court in June 2025, ~ 9 months ago, was acknowledgement of this inevitable Constitutional obligation; this case is now the vehicle by which this obligation must be met.

The statute governing this case came from an extraordinary, bipartisan effort to rectify the unfairness of the pre-existing civil forfeiture scheme, which most agreed violated due process, and the statute was passed with the explicit purpose to make civil forfeiture procedure "just" for claimants, especially for innocent owners. *See, e.g.,* Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, 114 Stat. 202; *USA v. One 1990 Beechcraft Aircraft,* 619 F.3d 1275, 1277-8 (11th Cir. 2010) ("[t]he purpose of CAFRA is to [ ] make federal civil forfeiture procedures fair to property owners and <u>to give owners innocent of any wrongdoing the means to recover their property</u> and make themselves whole after wrongful government seizures.")

CAFRA's provisions imply that a stay of discovery in a case like this, if there is objection by a party, should not permitted unless civil discovery would harm either a pending criminal investigation/prosecution or burden a Defendant's 5th Amendment rights, and that disallowing one party only from pursuing their claims in a forfeiture action through civil discovery is prohibited if the other party is permitted discovery. 18 USC § 981(g).

Regardless, indefinite, open ended stays are generally prohibited absent some acutely compelling reasons, and even lengthy stays are discouraged. *USA v. Real Prop. Known as 223 Spring Water Lane*, No. 6:18-CV-315-REW, 2021 U.S. Dist. LEXIS 261147, at *10 (E.D. Ky. Feb. 26, 2021) ("§ 981(g) does not excuse an ongoing, indefinite stay that deprives a person of a

property interest without proper process"); *USA v. $ 463,497.72 from Best Bank Account # XXX2677, et al.,* 604 F. Supp. 2d 978, 982 (S.D. Mich. 2009) (even accepting that government "needs time to complete its investigation, [ ] that time reasonably is drawing to a close[;]" further 90 day stays not warranted); *Lee v. Trump*, No. 21-cv-400, 2024 U.S. Dist. LEXIS 81317 *7 (D.D.C. Apr. 18, 2024) (concerns of Defendant's Fifth Amendment rights being undermined, limit of criminal discovery, and potential exposure of Defense strategy by civil discovery not "so acute as to justify an indefinite stay").

In any event, claimants have a due process right to prompt resolution of their claims independent of any statutory provisions governing the timeliness of forfeiture actions/adjudications. *E.g. U.S. v. Banco Cafetero Panama*, 797 F.2d 1154, 1163 (2d Cir. N.Y. 1986) (superseded by statute on other grounds as stated at 253 F. Supp. 2d 789, 795); *U.S. v. $8,850*, 461 U.S. 555, 564-565 (1983); *U.S. v. Von Neumann* 474 U. S. 242, 249-250 (1986); *Culley v. Marshall* 144 S. Ct. 1142, 1146 (2024).  Further, a continued stay risks a lack of transparency that could imperil an informal resolution.

With that in mind, Claimants propose that the Court deny the government's request for a further blanket stay and instead permit at least limited written discovery directed at (1) verification of claimants' account balance/s at the time of seizure; (2) the government's intentions and efforts regarding retrieval of BTC-e assets held abroad; and (3) Mt. Gox's standing/relationship as to BTC-e funds in July 2017 at the time of seizure.

This limited discovery is narrowly tailored, imposes no burden on any pending criminal investigation, and is the minimum necessary to make meaningful progress towards a stipulated resolution, and to move the case forward in any meaningful way.

Respectfully Submitted,

Date: April 7, 2026

By: /s/ *Edward M. Burch*
EDWARD M. BURCH
Law Office of Michael and Burch, LLP
One Sansome Street, Suite 1400
San Francisco, CA 94104
Telephone:    (415) 946-8996
E-mail:        edward@michaelburchlaw.com

/s/*Leslie Sammis*
LESLIE SAMMIS
Sammis Law Firm, P.A. 1005 N. Marion St.
Tampa, Florida 33602
Telephone: (813) 250-0500
Email: lsammis@sammislawfirm.com

s/*David B. Smit*h
DAVID B. SMITH, D.C. Bar #403068
David B. Smith, PLLC
108 North Alfred St., 1st Floor Alexandria, VA 22314
Telephone: (703) 548-8911
Email: dbs@davidbsmithpllc.com

Attorneys for Certain Claimants
1. JOSEPH BARRETT
2. MARC ANDRE GUINDON
3. JUAN MATEO LORENZO
4. ARON OPTHUN
5. KIRK OUIMET
6. MICHAEL BARTH VIK
7. FELIX CORREA
8. RADOSLAV BARKA
9. JOHN BARNES
10.    MARIO CASAR
11.    ZACHARY GLYNN.
12.    DANIEL GROVES
13.    OLEKSANDR HARSHYN
14.    BRANDON JUREWICZ
15.    WEIBIN LAM
16.    BRADLEY MARION

6

17. MAXIMILIAN PARUSEL
18. KEVIN TILLBROOK
19. RYAN UNDERWOOD
20. DAVID WEEKS
21. LENNART MATTIAS WERNER
22. ALEKSANDR LINENKO
23. BRUCE TIEMANN.
24. KAZJIN YASIN SALIH
25. BENJAMIN JAMES MORAN
26. PAUL RHODES
27. ALDIS RIGERTS
28. ERIC SANDRI
29. NIKOS VERSCHORE