**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| United States of America, | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | No. 1:25-cv-02085-CJN |
| | ) | |
| v. | ) | |
| | ) | |
| All virtual currency held in the BTC-e | ) | |
| operating wallets as of July 25, 2017, and | ) | |
| other assets further described herein | ) | |
| | ) | |
| Defendants *in rem*. | ) | |

**REPLY TO STATUS REPORT**

On March 31, 2026, the Government filed a Status Report which asked, *inter alia*, for the Court to extend the stay in this case pending the Government's upcoming meeting with Mt. Gox. The Government explained how it is seriously considering a global cooperative resolution of this case but how the Mt. Gox claim is a major potential stumbling block to such resolution. On April 7, numerous accountholder claimants filed an opposition to further stay (Dkt. 341), and other accountholder claimants joined in this opposition (Dkts. 342, 344). On April 15, the Court ordered the Government to file a reply to these oppositions. The Government hereby does so.[1]

Initially, the accountholder claimants do not dispute that resolving the Mt. Gox claim is critical to an overall resolution of this case, for the reasons explained in the Government's Status Report. Moreover, the Government and Mt. Gox have now agreed to hold their next meeting in just two weeks (on or about May 13), at which they expect to reach a meeting of the minds—or satisfy themselves that there will be no meeting of the minds—about whether there is an adequate

---

[1] The Government apologizes for the late timing of this reply. In its April 15 Minute Order, the Court ordered the Government to reply by April 22. However, the two Government attorneys still working this case both inadvertently missed the April 15 Minute Order until today, as one was on a family vacation on April 15 and the other was in trial prep.

1

tracing link between the funds stolen from Mt. Gox and the funds the Government seized from BTC-e. This alone counsels in favor of extending the stay at least through the Mt. Gox meeting. By their own admission, the accountholder claimants are interested in a cooperative resolution of this case, and by their own admission such cooperative resolution would seem infeasible until the Mt. Gox claim is dealt with.

Certain other statements by the accountholder claimants warrant a brief response. First, Claimants' reference to 18 U.S.C. § 981(g) is a red herring. While Section 981(g) authorizes a stay to protect co-pending criminal investigations or claimants' Fifth Amendment rights, it is not the exclusive stay authority for civil forfeiture cases; civil forfeiture courts retain their inherent authority to stay cases for efficiency or case-management reasons. *See, e.g., United States v. All Funds*, No. 2:20-cv-8466 (C.D. Cal.), Dkts. 228, 234, 249 (staying civil forfeiture case for more than one year based on such efficiency and case-management concerns). Second, while it may be true that "lengthy" or "open-ended" stays are disfavored, the Government is not seeking a lengthy or open-ended stay. The Government is seeking a narrow continued stay to allow for completion of the Mt. Gox talks (and for the FBI to finish its calculation of accountholder balances, which should conclude in roughly the same timeframe).

Third, the accountholder claimants are incorrect when they allege that "Plaintiff has also suggested it will not seek to gain custody of Defendant Properties B-E, properties apparently currently located in foreign countries, despite having obtained seizure warrants as to some of those properties and instituted this forfeiture action against them here." Dkt. 341 at 3. What the Government has actually said is that, in a potential settlement with Claimants, the Government would not release to Claimants the foreign fiat currency represented by assets B-E. There are numerous reasons for this, including that Claimants have no realistic chance of tracing their

2

deposited monies into these foreign assets and that entering into a settlement over these assets would require bringing in multiple foreign sovereigns.

Fourth, Claimants seek discovery into "verification of claimants' account balance/s at the time of seizure." Dkt. 341 at 5. Of course, re-creating Claimants' account balances is the very task that the FBI is currently engaged in. Moreover, Claimants' artful word "verification" deserves unpacking. In talks with Claimants' counsel, they stated that they already know their clients' account balances and merely want discovery to double-check what they already know. In the ordinary course of discovery, perhaps a party is entitled to discovery in order to double-check facts already in his possession. But certainly this approaches the outer bounds of relevance and importance, such that there is no good cause to lift the stay just so Claimants can double-check facts that they believe they already know.

Respectfully submitted,

MARGARET A. MOESER
CHIEF
MONEY LAUNDERING, NARCOTICS
AND FORFEITURE SECTION

*/s/ Joshua L. Sohn*
JOSHUA L. SOHN
Trial Attorney
Money Laundering, Narcotics
And Forfeiture Section
Criminal Division
United States Department of Justice
1400 New York Avenue NW
Washington, DC 20005
Telephone: (202) 353-2223
joshua.sohn@usdoj.gov

*/s/ Catherine Alden Pelker*
CATHERINE ALDEN PELKER
Trial Attorney

3

Computer Crime and Intellectual Property Section
Criminal Division
United States Department of Justice
1301 New York Avenue NW
Washington, DC 20530
Telephone: (202) 514-1062
catherine.pelker@usdoj.gov

4

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2026, I caused the foregoing document to be served, via CM/ECF, to all counsel of record in this action. I also emailed a copy of this document to all *pro se* parties whose email addresses are readily available.

By:      */s/ Joshua L. Sohn*
Joshua L. Sohn