## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

United States of America,

      Plaintiff,

v.

All virtual currency held in the BTC-e
operating wallets as of July 25, 2017, and
other assets further described herein,

      Defendants in rem.

_____

**Civil Action No. 1:25-cv-02085-CJN**

**Hon. Carl J. Nichols**

## PRO SE CLAIMANT KEVIN REILLY'S NOTICE OF PROPOSED
## GLOBAL SETTLEMENT FRAMEWORK AND MOTION TO CONDITION
## FURTHER STAY ON COMMENCEMENT OF GOOD-FAITH
## SETTLEMENT DISCUSSIONS

### INTRODUCTION

Pro se Claimant Kevin Reilly respectfully submits this Notice of Proposed Global Settlement Framework and moves the Court to condition any further stay of proceedings on the Government's commencement of good-faith settlement discussions with accountholder claimants based on the framework presented herein, or a comparable alternative proposed by the Government, within thirty (30) days of the Court's order.



**RECEIVED**

JUN 01 2026

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

The Government's May 20, 2026 Status Report requests a 45-day stay extension while encouraging accountholder claimants and the Mt. Gox bankruptcy trustee to develop a joint global resolution proposal. Claimant has done precisely that. The framework presented here is modeled on United States v. BCCI Holdings (D.D.C. 1991-1999) — litigated in this same courthouse before the same MLARS division — in which the Government distributed over $4 billion in forfeited assets to innocent depositors of a criminal financial institution. Claimant is not asking for anything novel. Claimant is asking the Government to apply its own precedent.

This framework has been reviewed by counsel representing additional accountholder claimants in this proceeding, who have indicated it would be acceptable to their clients as a basis for negotiation. It is also submitted on behalf of a coordinating group of ten pro se claimants who have reviewed and endorsed it as a basis for negotiation. It is presented now as a unified coalition position for the Court's consideration and to provide the Government with a concrete framework around which good-faith discussions can commence during any further stay.

## BACKGROUND

### A. Eight Years of Government Custody With No Compensation to Innocent Depositors

1.  In July 2017, the Government seized BTC-e's operating wallets and all user assets. For nearly eight years — despite possessing BTC-e's servers and complete user account records — the Government initiated no civil forfeiture proceeding and provided no notice to depositors.

2.  In 2017, simultaneously with the seizure, FinCEN assessed a civil money penalty of $110,003,314 against BTC-e and $12,000,000 against Alexander Vinnik personally — a combined $122,003,314 — establishing beyond any doubt that the Government had full knowledge of BTC-e, its operator, and its depositors from the date of seizure. See FinCEN Press Release, July 27, 2017.

3.  In February 2025, the criminal case against Vinnik was dismissed before sentencing when he was released in a prisoner exchange with Russia. White House Press Secretary Caroline Leavitt publicly stated at a press briefing: "Vinnik was a nonviolent

crypto criminal, and as part of this exchange, he has forfeited more than $100 million that he obtained in that illegal crime." CBS News, Feb. 12, 2025. No judicial finding of wrongdoing was made against any BTC-e depositor.

4.  On June 30, 2025 — approximately eight years after the seizure — the Government filed its civil forfeiture complaint. The complaint targets, among other assets, 925 Bitcoin and approximately $89,683,590.51 in funds, including assets held in New Zealand understood to represent the interception of moving digital wallets. See Dkt. 1.

5.  The Government's confirmed minimum recovery from BTC-e enforcement totals at least $311 million in nominal values, as set forth in the asset table attached hereto as Exhibit A. However, this figure almost certainly understates the Government's actual recovery. BTC-e was a cryptocurrency exchange whose assets were overwhelmingly digital, not USD. If any portion of the confirmed penalty and forfeiture amounts was satisfied in cryptocurrency rather than converted to USD — a question the Government has not answered — the current market value of those assets would be a substantial multiple of their 2017 nominal valuation. Bitcoin alone has appreciated approximately 43-fold since the date of seizure. Similarly, the New Zealand seizure, understood to involve the interception of moving digital wallets, may hold assets whose current value substantially exceeds the $89.7 million figure stated in the civil complaint. The Government possesses complete information about the current form and value of all recovered assets. Claimants do not. This asymmetry of information is itself a reason to condition the stay on meaningful disclosure.

6.  No accountholder claimant has received any compensation. Approximately 97% of BTC-e's one million users have received no notice of the forfeiture proceeding whatsoever.

**B. The Current Procedural Posture Invites Claimant Participation in Resolution**

7.  The Government's May 20, 2026 Status Report confirms that the FBI has made substantial progress assessing BTC-e account balances, that the Government met with Mt. Gox counsel on May 13, 2026, and that Mt. Gox has been encouraged to contact accountholder claimants directly to develop a joint global resolution proposal.

8.   Claimant has attempted to obtain basic information necessary to participate meaningfully in this process, including the exact Vinnik forfeiture amount, through a pending motion filed May 20, 2026. That motion remains unresponded to. Claimant also sought direct engagement with Government counsel, including a meeting in Washington, D.C., at which Government counsel was unable to provide any information regarding settlement figures or the status of asset recovery. Claimant therefore brings this proposal directly to the Court.

## THE PROPOSED SETTLEMENT FRAMEWORK

The complete proposed framework is attached hereto as Exhibit A. Its essential structure is as follows.

### Tier 1 — Interim Baseline Distribution

A fixed payment of $450,000 per verified accountholder claimant, totaling approximately $45 million across approximately 100 claimants. This amount represents less than 20% of the Government's confirmed minimum cash recovery of $222 million. The payment is final, non-refundable, non-offset against Tier 2 distributions, and does not constitute an admission of wrongdoing by any party.

The $450,000 baseline reflects three components: (1) a time-value component of approximately $312,000 representing opportunity cost on a conservative average principal estimate compounded at the U.S. Treasury 10-year note benchmark rate over eight years; (2) a displacement component of $88,000 reflecting loss of use during an extraordinary period of digital asset market development; and (3) a reasonable approximation component of $50,000 reflecting the evidentiary burden imposed on claimants by the Government's extended custody of BTC-e records. This methodology is consistent with standard federal civil judgment interest calculations and the reasonable approximation standard applied in BCCI Holdings.

Verification is simplified: proof of account existence through any corroborating evidence plus a sworn declaration. No account balance documentation required for Tier 1 eligibility. Any claimant may accept Tier 1 as full settlement of all claims.

**Tier 2 — Pro Rata Property Return**

All Group A cryptocurrency returned in kind, distributed pro-rata among claimants with verified balance claims exceeding the Tier 1 baseline. Verification applies the Cohan doctrine reasonable approximation standard — precision is not required where the Government's own extended custody created the evidentiary gap, consistent with BCCI Holdings.

**The New Zealand Incentive Mechanism**

Approximately $89.7 million in BTC-e-related assets were seized by New Zealand authorities in coordination with U.S. enforcement and remain unrecovered. This framework aligns the Government's financial interests with aggressive repatriation: the first $45 million recovered reimburses the U.S. Treasury for Tier 1 payments at zero net cost; the remaining approximately $45 million is distributed pro-rata to claimants with unsatisfied Tier 2 claims. Under the current passive posture, neither the Government nor claimants benefit from the New Zealand assets. This framework changes that calculus.

## <u>ARGUMENT</u>

### I. THE COURT HAS AUTHORITY TO CONDITION A FURTHER STAY ON GOOD-FAITH SETTLEMENT DISCUSSIONS.

This Court has broad equitable authority over civil forfeiture proceedings, including authority to impose conditions on stays of proceedings. See Landis v. North American Co., 299 U.S. 248, 254 (1936) ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket"). Where a stay is sought for the benefit of one party, the Court may condition it on that party taking steps that protect the interests of other parties. The Government seeks a stay to advance its own resolution process. Conditioning that stay on commencement of good-faith settlement discussions with claimants who have presented a concrete framework is a modest and appropriate exercise of this authority.

## II. THE BCCI EXPERIENCE DEMONSTRATES THAT GLOBAL DEPOSITOR RESOLUTION FRAMEWORKS ARE FEASIBLE AND APPROPRIATE.

The BCCI proceedings demonstrate that courts, the Department of Justice, and claimants can successfully administer large-scale depositor compensation frameworks in cases involving criminal financial institutions. Claimant does not contend that BCCI controls the outcome here. Rather, BCCI provides a practical example of how innocent accountholders may be compensated through a structured resolution process while preserving the Government's enforcement objectives.

## III. THE GOVERNMENT'S CONFIRMED RECOVERY MAKES THE TIER 1 BASELINE FISCALLY MODEST.

The Government's confirmed minimum cash recovery of $222,003,314 — established by public record and the White House Press Secretary's own statement — dwarfs the proposed $45 million Tier 1 distribution. The Government would retain a minimum of $177 million in confirmed cash proceeds plus the full Group A crypto pool pending Tier 2 distribution. If, as the evidence suggests, any portion of the Government's recovery was held in cryptocurrency rather than converted to USD, the Government's actual retained value is a multiple of these nominal figures. The Government is uniquely positioned to evaluate the feasibility of an interim distribution because it alone possesses complete information regarding the form, value, and status of assets recovered through BTC-e-related enforcement actions.

## IV.  THE INFORMATION ASYMMETRY BETWEEN THE GOVERNMENT AND CLAIMANTS IS ITSELF A BASIS FOR COURT ACTION.

The Government knows the exact current form and value of every asset it has recovered in connection with BTC-e enforcement. Claimants know only what has been publicly announced. The Government has declined to disclose the Vinnik forfeiture amount despite a pending claimant motion, and has not disclosed whether any recovered assets are held in cryptocurrency rather than USD. This asymmetry prevents claimants from meaningfully evaluating any settlement proposal — including their own — and from participating on equal footing in the joint resolution process the Government has specifically invited. Conditioning the stay on basic asset disclosure is the minimum necessary to make the Government's invited process meaningful rather than illusory.

## V.  CONTINUED DELAY COMPOUNDS THE HARM TO INNOCENT CLAIMANTS AND RAISES SERIOUS CAFRA QUESTIONS.

Every additional 45-day stay imposes real and growing costs on innocent claimants who have waited since 2017. The opportunity cost of digital assets held in Government custody during an extraordinary period of cryptocurrency appreciation is not abstract — it is calculable and compounding daily. The CAFRA five-year statute of limitations established by Congress in 19 U.S.C. § 1621 reflects a congressional judgment that forfeiture proceedings must be commenced promptly to protect innocent property owners. The Government's eight-year delay before filing its civil complaint raises serious questions under CAFRA that claimants reserve the right to pursue should good-faith settlement discussions not commence.

## RELIEF REQUESTED

Claimant respectfully requests that this Court:

1.   Accept this Notice of Proposed Global Settlement Framework and direct that it be made part of the record in this proceeding;

2.  Condition any further stay on the Government filing, within thirty (30) days, a written response stating whether it is willing to engage in settlement discussions based upon the attached framework or identifying the specific components of the framework that it believes are impracticable or inconsistent with the Government's position;

3.  Direct the Government, as a condition of any further stay, to disclose whether assets recovered in connection with BTC-e enforcement were retained in cryptocurrency or converted to U.S. dollars, and to disclose the aggregate amount forfeited by Alexander Vinnik in connection with the resolution of his criminal case;

4.   Direct the Government to respond to Claimant's pending May 20, 2026 motion requesting disclosure of the Vinnik forfeiture amount within fourteen (14) days;

5.  Invite counsel for represented accountholder claimants and Mt. Gox to submit responses to this framework within thirty (30) days, with a status conference to follow if the Court deems appropriate; and

6.  Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

_____  5/28/26

/s/ Kevin Reilly

Kevin Reilly

355 Kenilworth Ave

Kenilworth, IL 60043

262-893-8902

kreilly100@gmail.com

Pro Se Claimant

Dated: May 28, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2026, I caused the foregoing Notice and Motion to be served upon the following counsel of record via CM/ECF and/or email:

Joshua L. Sohn / Allison Ickovic, Trial Attorneys

Money Laundering, Narcotics and Forfeiture Section

Criminal Division, U.S. Department of Justice

1400 New York Avenue NW, Washington, DC 20005

joshua.sohn@usdoj.gov

Catherine Alden Pelker, Trial Attorney

Computer Crime and Intellectual Property Section

Criminal Division, U.S. Department of Justice

1301 New York Avenue NW, Washington, DC 20530

catherine.pelker@usdoj.gov

/s/ Kevin Reilly

Kevin Reilly