# Proposed Settlement Framework

## Civil Action No. 1:25-cv-02085

### United States v. All Virtual Currency Held in the BTC-e Operating Wallets

---

This framework is modeled on *United States v. BCCI Holdings* (D.D.C. 1991–1999), litigated in this same courthouse before the same MLARS division, in which the government compensated innocent depositors of a criminal financial institution from forfeited assets, distributing over $4 billion worldwide. We are not asking for anything novel. We are asking the government to apply its own precedent.

---

## Two-Tier Distribution Structure

### Tier 1 — Interim Baseline Distribution

**Amount:** $450,000 per verified claimant (approximately 100 claimants; total approximately $45 million).

 The $450,000 Tier 1 baseline reflects three components. First, a time-value component representing the opportunity cost of assets held in government custody since 2017: a conservative average principal estimate of $200,000 compounded at the U.S. Treasury 10-year note benchmark rate over approximately eight years yields approximately $312,000. Second, a displacement component (D) of $88,000 reflecting documented loss of use during an extraordinary period of digital asset market development. Third, a reasonable approximation component (R) of $50,000 reflecting the evidentiary burden imposed on claimants by the Government's extended custody of BTC-e records.

These three components together produce the $450,000 baseline figure. This methodology is consistent with standard federal civil judgment interest calculations and the reasonable approximation standard applied in BCCI Holdings.

**Character:** A fixed interim distribution to verified accountholder claimants to provide prompt partial recovery while preserving all parties' rights with respect to final allocation. This payment is final, non-refundable, and non-offset against Tier 2 distributions. It does not constitute an admission of wrongdoing by any party.

**Funding source:** Confirmed Government recovery in this matter totals a minimum of $222 million in cash penalties and forfeiture proceeds, plus an undisclosed value of crypto-denominated assets held since 2017. At $450,000 per verified claimant across approximately 100 claimants, the total Tier 1 distribution of $45 million represents less than 20% of confirmed minimum cash recovery alone.

**Verification standard:** Simplified. Proof of account existence through any corroborating evidence — BTC-e login confirmation emails, funding records, blockchain deposit records, contemporaneous communications, or other objective indicia — plus a sworn declaration under penalty of perjury. No account balance documentation required for Tier 1 eligibility.

**Timing:** Payment within 30 to 60 days of settlement approval.

**Claimant option:** Any claimant may accept the Tier 1 baseline as full settlement of all claims against the forfeited assets and release further participation. This provides immediate certainty for claimants with limited documentation.

---

## Tier 2 — Pro Rata Property Return

**Assets:** All Group A cryptocurrency returned in kind, distributed pro-rata among claimants with verified balance claims exceeding the Tier 1 baseline.

**Verification standard:** Best available evidence. Claimants submit sworn declarations of good-faith account balance estimates supported by all available corroborating documentation. A neutral claims administrator applies a reasonable approximation standard consistent with the *Cohan* doctrine — precision is not required where the government's own seizure and extended custody since 2017 created the evidentiary gap. This approach mirrors the standard applied in *United States v. BCCI Holdings* (D.D.C. 1991–1999), where the court accepted good-faith documentation from innocent depositors whose records were incomplete or inaccessible due to the criminal enterprise's collapse.

**Distribution:** Pro-rata based on validated claims. Crypto returned in kind.

---

# The New Zealand Incentive Mechanism

Approximately $90 million in BTC-e-related assets were seized by New Zealand authorities in coordination with U.S. enforcement. These funds remain unrecovered. Under the current posture the government has no institutional incentive to pursue repatriation aggressively.

This framework changes that calculus.

Upon recovery of New Zealand assets, proceeds are allocated as follows:

- **First $45 million:** Reimburses the U.S. Treasury for the Tier 1 baseline payments, restoring the forfeiture fund to its pre-settlement balance. The government's net cost of the entire Tier 1 baseline payment is **zero** upon New Zealand recovery.
- **Remaining approximately $45 million:** Distributed pro-rata to claimants whose Tier 2 verified claims were not fully satisfied by Group A crypto distributions. Additionally, interest accrued on New Zealand-held assets during the repatriation period is included in this distribution pool.

Under this structure, aggressive pursuit of New Zealand repatriation becomes a direct financial priority for the government — it recovers its $45 million outlay in full and delivers $45 million in additional claimant recovery simultaneously. Under the current passive posture, neither the government nor claimants benefit from the New Zealand seizure. This framework structure incentivizes the pursuit.

## Why This Framework Serves All Parties

**For claimants:** Immediate payment of $450,000 within 60 days regardless of documentation quality. Additional pro-rata crypto recovery for documented claims. Potential supplemental NZ distribution. Certainty and finality.

**For the government:** Retains $177 million in confirmed cash plus all Group A crypto pending Tier 2 distribution. Recovers the full $45 million Tier 1 outlay upon New Zealand repatriation at zero net cost. Closes a proceeding during which assets have been in government custody since 2017. Avoids protracted litigation over complex forfeiture theory, cross-currency trading calculations, and unresolved Mt. Gox tracing claims. All parties reserve their respective litigation rights should good-faith settlement discussions not result in global resolution.

**For the court:** Resolves a complex multi-claimant proceeding without individually adjudicating approximately 100 claims of varying documentation quality, consistent with the approach taken in *BCCI Holdings* — the longest forfeiture proceeding in federal racketeering history — which this framework is designed to avoid repeating.

## Request

We invite counsel for all claimant groups to consider this framework as the basis for a unified coalition position to be presented jointly to Trial Attorney Joshua Sohn and MLARS. The pro se claimant group is prepared to coordinate on this basis. All parties reserve full litigation rights, including discovery and constitutional challenges, should good-faith settlement discussions not commence.

*Kevin Reilly — Pro Se Claimant /Chicago Board of Trade Member (30 years) — Vanderbilt University / University of Chicago, Accounting*

## Confirmed Government Recovery — Public Record

| Source | Amount | Year | Citation |
|---|---|---|---|
| FinCEN penalty — BTC-e entity | $110,003,314 | 2017 | DOJ press release |
| FinCEN penalty — Vinnik personally | $12,000,000 | 2017 | DOJ press release |
| Vinnik prisoner swap forfeiture | $100M+ | 2025 | White House Press Secretary, CBS News Feb. 12, 2025 |
| New Zealand / FXOpen seizure | ~$89.7M | 2020 | Civil forfeiture complaint, Dkt. 1 |
| **Confirmed minimum total** | **$311M+** | | |

Note: The current market value of crypto-denominated components is known to the Government and has not been disclosed to claimants despite a pending court motion.