UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

       Plaintiff,

v.

ALL VIRTUAL CURRENCY HELD IN THE      **Case No. 1:25-CV-02085**
BTC-E OPERATING WALLETS, et al,

       Defendants *in rem*,

1.    JOSEPH BARRETT
2.    MARC ANDRE GUINDON
3.    JUAN MATEO LORENZO
4.    ARON OPTHUN
5.    KIRK OUIMET
6.    MICHAEL BARTH VIK
7.    FELIX CORREA
8.    RADOSLAV BARKA
9.    JOHN BARNES
10.   MARIO CASAR
11.   ZACHARY GLYNN
12.   DANIEL GROVES
13.   OLEKSANDR HARSHYN
14.   BRANDON JUREWICZ
15.   WEIBIN LAM
16.   BRADLEY MARION
17.   MAXIMILIAN PARUSEL
18.   KEVIN TILLBROOK
19.   RYAN UNDERWOOD
20.   DAVID WEEKS
21.   LENNART MATTIAS WERNER
22.   ALEKSANDR LINENKO
23.   BRUCE TIEMANN
24.   KAZJIN YASIN SALIH
25.   BENJAMIN JAMES MORAN
26.   PAUL RHODES
27.   ALDIS RIGERTS
28.   ERIC SANDRI
29.   NIKOS VERSCHORE

       Claimants.

_____/

**CAPTIONED CLAIMANTS' SECOND OPPOSITION TO FURTHER STAY**

Claimants respectfully oppose Plaintiff's May 20 request for an additional 45 day stay. Plaintiff ("the Government") advances three justifications for continued delay: (1) its ongoing assessment of claimant accounts and/or balances, (2) its review of and "potential" response to information provided by Mt. Gox, and (3) a new suggestion that in the meantime Mt. Gox and claimants make and "present a joint proposal for the Government to consider with an eye toward potential global resolution." None of these justifications require that discovery remain stayed, in fact, they underscore why allowing discovery at this time is necessary to move forward.

At a minimum, the Government's continued investigative and settlement efforts are not mutually exclusive with discovery, and it is prejudicial for Claimants to continue to be made to wait for information to which are they are entitled and which may accelerate resolution.

Claimants have previously briefed that they have a constitutional right to a prompt resolution of this forfeiture action [1] (stemming from a property seizure nearly a decade ago), that excessive delay is inherently and actually prejudicial, and that this action is time barred and subject to dismissal in any event. *See* Doc. 341. In that filing, Claimants identified three limited and discrete categories of information, i.e. discovery from the government, which they submit is

---

[1] *See, e.g., United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1163 (2d Cir. N.Y. 1986) ("… we do not agree with the Government's contention that due process is fully satisfied merely by the commencement of forfeiture proceedings within a reasonable time after seizure or, as here, prior to seizure. The Government argues that, once an action is filed, delays of any length may be granted … To require prompt filing of a forfeiture action but allow indefinite postponement of the trial would reduce the filing requirement to a nullity … the *Barker* test … applies to the holding of the forfeiture trial as well as to the filing of the action, [so] there is a due process violation at some point…") (superseded on other grounds by statute as stated in 253 F. Supp. 2d 789, 795); *Culley v. Marshall*, 601 U.S. 377, 387, 144 S. Ct. 1142, 1150 (2024) ("th[is] Court's precedents already require a timely hearing, and a property owner can of course raise *$8,850*-based arguments in an individual case to ensure a timely hearing"); *id.* at 393 ("I agree with the Court that, at a minimum, the Due Process Clause requires a prompt hearing in civil forfeiture cases.") (J. Gorsuch, concurring).

essential to any efficient and equitable pro rata resolution: (A) verification of claimants' account balances; (B) information regarding the government's intentions and efforts to obtain foreign assets, [2] and (C) the legal basis for entertaining Mt. Gox's claim. (Doc. 341 at 5). Those requests remain unfulfilled.

It is important to remember that in 2017, the Government seized Claimants' property from the BTC-e exchange and simultaneously took down the website, preventing anyone from accessing not only their cryptocurrency but also their account information and balances. Since the time of seizure, Claimants have been unable to verify their own balances or holdings on BTC-e. So, while Claimants appreciate that the FBI has made "substantial progress" assessing claimant balances such that only "some" accounts and/or holdings remain unverified, such progress as to the government's internal information gathering is not the same as transparency to Claimants. It appears that, but for records shared with two of the 94 claimants, none of this information has been disclosed. Claimants are unable to compare the Government's verified figures against their own records of holdings at the time of seizure, a prerequisite to any future fair distribution. Without transparency, i.e. disclosure, how can any one claimant be assured that all claimants' holdings have been verified against BTC-e records at the time of seizure?

---

[2] The government's status report is silent as to the foreign asset issue, which remains important and unresolved for Claimants. Plaintiff stated in its Reply to Status Report filed 4/27/26, that it "would not release to Claimants the foreign fiat currency represented by assets B-E" (assets frozen pursuant to Plaintiff's own seizure warrants and named as Defendants in this in rem action, representing more than $100 million), because "[c]laimants have no realistic chance of tracing their deposited monies into these foreign assets and that entering into a settlement over these assets would require bringing in multiple foreign sovereigns." (Doc. 347, 2-3). Yet the government has made exact same representation regarding the un-traceability of Defendant property A, while also seemingly accepting that pro rata distribution is the equitable remedy there. The government provides no meaningful distinction. Involving friendly foreign nations may be inconvenient, or require some amount of work, but should not be a legal barrier to recovery. Discovery on this issue is warranted.

Claimants cannot be expected to accept a proportionate distribution without the disclosure of BTC-e records. Such disclosure, even on a rolling basis, is feasible and overdue. It is merely asking for a minimal share of documents and information *solely* possessed by the government. [3]

In accordance with the government's suggestion that Claimants meet with Mt. Gox, on May 28, 2026, Claimants met with representatives of the Mt. Gox trustee. Unfortunately, that meeting clarified, at least from Claimants' perspective, that a joint settlement proposal is not feasible. The parties' respective legal positions are fundamentally incompatible, and no common ground for a unified resolution exists, at least at this time.

The meeting also confirmed Claimants' view that Mt. Gox's standing is a threshold issue that must be resolved before any global distribution framework can be structured. The government has indicated that it has received "information provided by Mt. Gox" which outlines "its factual and legal theory for why the Defendant Assets are, in their view, traceable to the cryptocurrency stolen from Mt. Gox and routed through BTC-e." Claimants are entitled to this information to assess Mt. Gox's standing and tracing theories. Furthermore, while the Government initially indicated that its meeting and information sharing with Mt. Gox was to assess whether to "try to fold Mt. Gox into a proposed resolution, or move to strike Mt. Gox for lack of standing …" (Doc. 328 at 3), the Claimants are entitled to understand the Government's position and what documentary evidence that position is based on.

To the extent Claimants do not obtain such information and documents from the Government, they must be allowed to obtain it from the Mt. Gox claimant itself. Indeed, all claimants' total (BTC) holdings at the time of seizure, excluding Mt. Gox, exceed the amount of

---

[3] As to the balances issue, if the FBI is the entity doing the work of verifying and assessing the claimants' accounts/balances, then it is unclear how the DOJ, i.e. the Government's attorneys in this case, simply sharing that information with Claimants is an undue burden.

BTC in Defendant Property A, i.e. 925 BTC. Recognition of Mt. Gox's claim, it appears, would wipe out the recovery of all other Claimants.

Standing and tracing issues aside, publicly available information regarding the ongoing Mt. Gox civil rehabilitation process underscores the practical inequity of entertaining Mt. Gox's claim at all. The Mt. Gox estate has already distributed recoveries to thousands of approved creditors representing approximately 21% of allowed claims, with further distributions anticipated through an active repayment process now extended to October 31, 2026. See Koinly, Mt. Gox: What Happened (Sept. 24, 2025), https://koinly.io/blog/mt-gox; Rehabilitation Trustee Announcement (Oct. 27, 2025). No offset or credit mechanism has been identified that would reduce Mt. Gox's claim here by amounts already distributed. The practical consequence is stark: whatever percentage of their claims the approximately 94 BTC-e accountholder claimants recover from this already-oversubscribed pool, Mt. Gox creditors would recover that same percentage on top of the 21% they have already received, ending up materially ahead of claimants who have received nothing, have no other avenue of recovery, and deposited their own independently sourced funds on BTC-e.

On another note, prejudice from an ongoing stay is measurable: the 925.94 bitcoin alone comprising a large portion of Defendant property A was worth approximately $99.3 million when the Complaint was filed and is worth approximately $71.4 million today, a loss of nearly $28 million in under a year. The Government continues to hold Claimants' property, refuses to share information or otherwise participate in the action, while the property's value deteriorates.

The composition of the claimant pool also remains unresolved. As this Court has noted, many claimants have filed claims without requesting leave to do so and/or on a date that would make the claim untimely to file. In addition to claims filed without leave (those of Remco

4

Hereijgers, Docs. 288, 300, Sajad Ghanizada, Doc. 297, and Matte Thibault, Doc. 338), at least seven motions for leave to file late claims remain pending and unruled upon: Dominik Buechsel, Doc. 293, 331, Simon Haigh, Doc. 309, Martin Spargo, Doc. 311, Michael Haworth, Docs. 315, 322, Louis Papaloizou, Doc. 320, Charles Edward Small, Doc. 327, and Paul Resch, Doc. 339). The Government has opposed several of these motions. Claimants take no position on the merits of any individual request but respectfully submit that the pool of eligible claimants is unsettled, which is an important issue – and perhaps even threshold depending on the amount that may be claimed by these individuals – that must be settled before any distribution framework can be even tentatively established.

For the foregoing reasons, Claimants respectfully request that the Court deny Plaintiff's request for an additional 45-day stay and allow discovery to proceed in this matter. Alternatively, if the Court is inclined to maintain a stay to some extent, Claimants respectfully request the Court allow the limited discovery outlined by Claimants in their previous filing (Doc. 341 at 5) and referenced on pp.1-2 above.

Respectfully Submitted,

Date: June 3, 2026

By: /s/ *Edward M. Burch*
EDWARD M. BURCH
Law Office of Michael and Burch, LLP
One Sansome Street, Suite 1400
San Francisco, CA 94104
Telephone:    (415) 946-8996
E-mail:        edward@michaelburchlaw.com

/s/*Leslie Sammis*
LESLIE SAMMIS
Sammis Law Firm, P.A. 1005 N. Marion St.
Tampa, Florida 33602
Telephone: (813) 250-0500
Email: lsammis@sammislawfirm.com

5

s/*David B. Smit*h
DAVID B. SMITH, D.C. Bar #403068
David B. Smith, PLLC
108 North Alfred St., 1st Floor Alexandria, VA
22314
Telephone: (703) 548-8911
Email: dbs@davidbsmithpllc.com

Attorneys for Certain Claimants
1.    JOSEPH BARRETT
2.    MARC ANDRE GUINDON
3.    JUAN MATEO LORENZO
4.    ARON OPTHUN
5.    KIRK OUIMET
6.    MICHAEL BARTH VIK
7.    FELIX CORREA
8.    RADOSLAV BARKA
9.    JOHN BARNES
10.    MARIO CASAR
11.    ZACHARY GLYNN.
12.    DANIEL GROVES
13.    OLEKSANDR HARSHYN
14.    BRANDON JUREWICZ
15.    WEIBIN LAM
16.    BRADLEY MARION
17.    MAXIMILIAN PARUSEL
18.    KEVIN TILLBROOK
19.    RYAN UNDERWOOD
20.    DAVID WEEKS
21.    LENNART MATTIAS WERNER
22.    ALEKSANDR LINENKO
23.    BRUCE TIEMANN.
24.    KAZJIN YASIN SALIH
25.    BENJAMIN JAMES MORAN
26.    PAUL RHODES
27.    ALDIS RIGERTS
28.    ERIC SANDRI
29.    NIKOS VERSCHORE

6