**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

United States of America,

      Plaintiff,

v.

All virtual currency held in the BTC-e

operating wallets as of July 25, 2017, and

other assets further described herein,

      Defendants in rem.

_____

**Civil Action No. 1:25-cv-02085-CJN**

**Hon. Carl J. Nichols**

**PRO SE CLAIMANT KEVIN REILLY'S REPLY IN SUPPORT OF
SUPPLEMENT TO MOTION FOR DISCLOSURE (Dkt. 365)**

<u>**INTRODUCTION**</u>

The Government's opposition to Claimant's Supplement to Motion for Disclosure (Dkt. 367) advances three arguments: that Dkt. 352 is moot, that Dkt. 365 was filed without meeting and conferring, and that the requested disclosures are irrelevant or redundant. The first argument is partially correct and Claimant does not contest the mootness of the conditional motion at Dkt. 352. The second argument is a procedural defect that has since been cured. The third argument — that basic information about the Government's total financial recovery from BTC-e enforcement is irrelevant to Claimant's claim — fundamentally mischaracterizes both Claimant's claim and the nature of the harm he has suffered.



**RECEIVED**

JUN 22 2026

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

**ARGUMENT**

**I.  CLAIMANT DOES NOT CONTEST THE MOOTNESS OF Dkt. 352.**

The Government argues that Dkt. 352,  which sought disclosure as a condition of a further stay,  was mooted by the Court's June 10, 2026 order lifting the stay. Claimant concedes this point with respect to the conditional motion. Dkt. 365, filed June 14, 2026, is a freestanding supplement that does not depend on the existence of a stay. It is the operative motion before the Court.

**II.  THE MEET-AND-CONFER REQUIREMENT HAS BEEN SATISFIED.**

The Government contends that Claimant failed to meet and confer. This argument fails. Claimant raised the precise subject matter of this motion directly with AUSA Sohn in person prior to filing. When AUSA Sohn stated he could not recall the relevant amounts, informal resolution was unavailable. Moreover, Government counsel has since confirmed in writing that 'the discovery clock began running when the Court unstayed the case' - i.e., June 10, 2026. Dkt. 365 was filed four days later. The Government's position on the merits is now fully known: it declines voluntary disclosure and opposes the motion. No further conferral would narrow the dispute or change that outcome.

**III. THE REQUESTED DISCLOSURES ARE DIRECTLY RELEVANT TO CLAIMANT'S CLAIM AND THE COURT'S OVERSIGHT OF THIS PROCEEDING.**

The Government's central merits argument is that Claimant's request for information about the Government's total BTC-e recovery is disproportionate to "the limited nature of Reilly's claim." (Dkt. 367 at 3.) This argument rests on a fundamental mischaracterization of Claimant's claim — one that Claimant's own verified claim (Dkt. 193), filed under penalty of perjury, directly contradicts.

**A.  The Government's "Small Claim" Characterization Is Incorrect.**

The Government's characterization of Claimant's claim as "relatively small" and "discrete" is factually incorrect. Claimant's verified claim (Dkt. 193) asserts ownership of 1,883.70 Litecoin — representing over 80% of the approximately 2,249 LTC in the

overall seized pool. A claim representing more than 80% of an entire seized asset class is not small by any reasonable measure.

Moreover, Claimant's verified claim expressly seeks "damages for the loss of use of my capital and the destruction of my trading operation." (Dkt. 193 at 2.) Claimant is a professional trader and thirty-year member of the Chicago Board of Trade. His cryptocurrency holdings constituted active working capital, not a passive investment.

This is confirmed by contemporaneous trading records. As documented in Claimant's official Coinbase Pro statement from January 2018 — only six months after the seizure — Claimant generated $27,598 in net trading profit in a single month through active LTC and BTC trading on a separate regulated exchange. (Exhibit F.) These records demonstrate both Claimant's professional trading capability and the concrete opportunity cost of having his primary position frozen since July 2017.

The Government's own February 10, 2026 Status Report acknowledged that it "did not appreciate until recently" the volume of cross-currency trading on BTC-e, noting that at least one claimant conducted more than 1,700 cross-currency trades. (Dkt. 328 at 2.) A Government that only recently recognized the trading complexity of these accounts is not well-positioned to characterize an active trader's claim as "relatively small".

**A**. **The Government's Characterization of Claimant's Account Ignores the Distinction Between Passive and Active Trading Accounts**.

The Government characterizes Claimant's claim as "relatively small" and "discrete." This characterization fundamentally misunderstands the nature of Claimant's account.

Claimant's verified claim asserts ownership of 1,883.70 Litecoin — representing over 80% of the approximately 2,249 LTC in the overall seized pool. A claim of this size is not small by any reasonable measure. More importantly, Claimant's account was not a passive holding. Claimant is a professional trader and thirty-year member of the Chicago Board of Trade. His cryptocurrency holdings on BTC-e constituted active working capital deployed in ongoing trading activity, not a static investment.

This distinction matters. Most accountholders on BTC-e appear to have used the platform for relatively passive storage of cryptocurrency. Claimant did not. He actively traded the LTC/BTC pair. This is confirmed by contemporaneous records. As documented in Claimant's official Coinbase Pro statement from January 2018 — only six months after the seizure — he generated $27,598 in net trading profit in a single month through active LTC and BTC trading on a separate regulated exchange (Exhibit

A). These records demonstrate both Claimant's professional trading capability and the concrete opportunity cost of having his primary trading position frozen since July 2017.

The Government's own February 10, 2026 Status Report acknowledged that it "did not appreciate until recently" the volume of cross-currency trading on BTC-e, noting that at least one claimant conducted more than 1,700 cross-currency trades. This admission is telling. It confirms that the Government is evaluating Claimant's account through the lens of a typical passive holder rather than recognizing it as an active trading operation.

## B.  The Deprivation Is Not Static — It Is a Compounding, Active Harm.

The Government's "small claim" framing treats Claimant's position as a fixed dollar amount. This misunderstands the nature of the harm. Claimant's cryptocurrency holdings were not a passive investment — they were working capital actively deployed in the LTC/BTC trading pair.

During the period of the Government's seizure, Claimant's position reached peak valuations of approximately $601,100 (December 2017), $721,000 (May 2021), and $251,920 (late 2024), before declining to its current value of approximately $80,000. These figures are based on publicly available LTC price data applied to Claimant's claimed 1,883.70 LTC position.

More importantly, active cryptocurrency trading involves a recurring cycle of appreciation, liquidation at higher prices and redeployment of capital at lower prices. Claimant executed this cycle professionally on other exchanges, as documented in the Coinbase Pro records. During each of the three major appreciation events described above, LTC subsequently collapsed, creating opportunities to substantially increase position size using gains from prior peaks. Claimant could only watch these cycles unfold — his capital frozen and his ability to sell, preserve gains, and redeploy entirely eliminated by the Government's continued possession of his assets.

Working capital that cannot be accessed, adjusted, or deployed is not merely 'frozen',  it is destroyed as a functional asset

A professional trader whose working capital has been frozen through three complete market cycles over nine years,  with documented trading activity generating five-figure monthly profits when not restricted, is not a peripheral party whose discovery requests can be dismissed on proportionality grounds.

### C.  The Government's Total Recovery Is Directly Relevant to Proportionality.

The Government argues that information about its total BTC-e recovery is irrelevant because FinCEN penalties and the Vinnik prisoner-swap forfeiture are not "Defendant Assets" in this proceeding. While technically correct in a narrow sense, this argument misses the point.

Claimant seeks this information to provide the Court with the full economic context in which any settlement or distribution framework must be evaluated. The Government has repeatedly cited resource constraints and case complexity as justifications for delay. Its confirmed recovery of at least $222 million in penalties and forfeiture proceeds from BTC-e-related enforcement is directly relevant to assessing those justifications.

With respect to the New Zealand assets, the Government concedes these are Defendant Assets (B) and (C). Its only response is that the Complaint already discloses their denomination and value. However, the Complaint reflects allegations made in June 2025. Claimant is entitled to current status, current value and any interest earned - information that may have changed and that is necessary for meaningful participation in settlement and scheduling discussions.

Furthermore, the Complaint does not address whether all recovered assets are held in cryptocurrency or fiat. Given that BTC-e was a cryptocurrency exchange and that Bitcoin has appreciated approximately 25-fold since the 2017 seizure, the current form of the Government's holdings is material. It directly affects the economic scale of the recovery against which any distribution must be measured.

## IV.  THE REQUEST TO ADMONISH CLAIMANT IS WITHOUT BASIS.

Claimant raised the substance of this motion directly with AUSA Sohn prior to filing. The Government's own counsel has confirmed in writing that 'the discovery clock began running when the Court unstayed the case' — a clock that had been running four days when Dkt. 365 was filed. The Court has already found that further delay prejudices

claimants. Seeking transparency about the Government's financial recovery in that context is not conduct warranting admonishment.

## CONCLUSION

Claimant is not a passive depositor seeking return of a fixed sum. He is a professional trader whose working capital was frozen through three complete market cycles over nine years, denied the ability to sell at peaks exceeding $700,000, re-establish on declines, and repeat — the most basic functions of his profession. The requested disclosure is the minimum transparency needed to evaluate his claim in that context. For the foregoing reasons, Claimant respectfully requests that the Court deny the Government's opposition, direct the Government to disclose the current form and value of all assets recovered in connection with BTC-e enforcement including the New Zealand Defendant Assets, and order such other relief as the Court deems just and proper. In the alternative, Claimant requests that the Court address these disclosure questions in the context of the July 10, 2026 joint status report and proposed scheduling order, directing the parties to include asset disclosure as a component of the discovery framework.

Respectfully submitted,

Kevin Reilly

Pro Se Claimant

Dated: June 22 ,2026

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth above, I caused the foregoing Reply to be served upon the following counsel of record via CM/ECF and/or email:

Joshua L. Sohn / Allison Ickovic, Trial Attorneys

Money Laundering, Narcotics and Forfeiture Section

Criminal Division, U.S. Department of Justice

1400 New York Avenue NW, Washington, DC 20005

joshua.sohn@usdoj.gov

Catherine Alden Pelker, Assistant Deputy Chief

Computer Crime and Intellectual Property Section

Criminal Division, U.S. Department of Justice

1301 New York Avenue NW, Washington, DC 20530

catherine.pelker@usdoj.gov

_____

Kevin Reilly

## EXHIBITS TO THIS REPLY

Exhibit A — Coinbase Pro Trading Statement, January 2018