**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| United States of America, | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | No. 1:25-cv-02085-CJN |
| | ) | |
| v. | ) | |
| | ) | |
| All virtual currency held in the BTC-e | ) | |
| operating wallets as of July 25, 2017, and | ) | |
| other assets further described herein | ) | |
| | ) | |
| Defendants *in rem*. | ) | |

**JOINT STATUS REPORT**

Pursuant to the Court's Minute Order of June 10, 2026 and July 10, 2026, the parties respectfully submit the following Joint Status Report.

**Government's Position**

*A. Discovery and Claimant Chart*

Since the Court lifted the stay on June 10, the Government has been working to create discovery packets for each of the 117 Claimants, comprising each Claimant's individual BTC-e account records. As the Court is aware, various Claimants have argued that they cannot adequately assess any Government settlement proposals without first obtaining their account records. The Government also believes that its production of these account records will facilitate adjudication of the claims in this action if a settlement is not reached. The Government is working hard to produce such records. Given the large number of claimants and the overall size of the BTC-e account repository, producing these discovery packets will take some time, but the Government is working to get them to Claimants as soon as possible and anticipates being able to transmit most, if not all, of these packets to existing Claimants before the end of August.

1

The Government has identified 16 claimants and remission petitioners for whom the Government cannot locate account records, and the Government is reaching out to these individuals to seek further information or evidence showing that they are indeed BTC-e accountholders. The Government may also serve Interrogatories, including Special Interrogatories under Supplemental Rule G(6), to these Claimants to assess whether they actually have or had BTC-e accounts.

Submitted herewith is a chart listing all the Claimants, together with information about whether they are represented or *pro se*.[1]

### B. Mt. Gox Claims

As previewed in its March 31, 2026 Status Report, the United States has undertaken a labor-intensive analysis to determine whether transactional data, electronic communications, and other records could be located and used to determine whether funds originating from Mt. Gox remained at BTC-e at the time the BTC-e servers were seized in 2017. This analysis is nearing completion and is expected to reveal that all or substantially all of the Mt. Gox-related funds were withdrawn from BTC-e before the Government seized BTC-e's servers. Counsel for the Government and Mt. Gox plan to have a meeting before the end of the summer regarding the Government's findings and to discuss disposition of Mt. Gox's claim or whether the parties should proceed to summary judgment regarding its claim.

As previously noted, determination of the Mt. Gox claim[2] could have a profound impact on the scope and possibility of a negotiated resolution of other claims in this action. *See* Dkt. 328;

---

[1] Due to technical CM/ECF limitations, the chart is a static scanned PDF with rather small text. The Government is happy to email the Court an editable, larger-text Excel spreadsheet if the Court so wishes.

[2] The "Mt. Gox claim" is the claim of Nobuaki Kobayashi as bankruptcy trustee of Mt. Gox (Dkt. 40).

February 20, 2026 Minute Order. Specifically, in its claim (Dkt. 40), Mt. Gox asserts an interest in *all* Defendant Properties. Therefore, resolving Mt. Gox's claim is essential to crafting a global settlement in this case.

### C. The Government's Decision to Provide Additional Notice to Potential Claimants

As detailed below, the Government has made the decision to send additional direct notice. Before outlining its prospective plan, the Government takes the opportunity to explain its notice procedures to date.

Pursuant to Supplemental Rule G(4)(a), the Government published notice to the world regarding this forfeiture action, the deadlines and procedures for filing a claim, and other filing information in this case by publishing the case on www.forfeiture.gov. Dkt. 292. The Government also notes that a lead administrator of BTC-e, Aleksandr Vinnik, also publicized this case among the Russian cryptocurrency community. *See, e.g.,* https://www.cryptopolitan.com/btc-e-crypto-in-cold-wallets-not-seized-us ("At a crypto conference in Russia, Vinnik spoke about the fate of client funds and urged those who wish to recover some of them to join a lawsuit in the United States."); *accord* https://cryptonews.net/news/security/32711028/; https://cryptorank.io/news/feed/e89de-vinnik-btc-e-wex-users-seek-return-of-funds (similar). The Government also notes that many of the law firms who represent Claimants in this case advertised extensively about the claims process in this case.[3] The Government further notes that this case received extensive media and social

---

[3] *See, e.g.,* https://www.dynamisllp.com/knowledge/btc-e-asset-recovery-doj-complaint; https://forfeiturelawfirm.com/victims-of-btc-e-crypto-forfeiture-have-only-60-days-from-7-4-2025-to-file/; https://criminaldefenseattorneytampa.com/blog/attorneys-filing-claims-for-btc-e-civil-asset-forfeiture-proceedings/

media coverage among the cryptocurrency community. *See, e.g.,* Dkt. 368 at 1-2 (citing social media posts and threads about this case).

Supplemental Rule G (4)(b) requires direct notice "to any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim under Rule G(5)(a)(ii)(B)." Pursuant to Supplemental Rule G(4)(b), the Government provided direct notice to roughly 100 BTC-e accountholders who had contacted the Government in the years since the Government seized the BTC-e servers, expressing concern about the status of their funds. Almost all of these individuals provided the Government with both their mailing and email addresses, thus letting the Government ascertain where they lived and allowing the Government to provide direct notice to these potential claimants located within the United States and to follow Mutual Legal Assistance (MLA) or foreign government requirements for notifying foreign-domiciled individuals. Indeed, the Government spent many hours writing (and thousands of dollars translating) MLA requests so that it could give direct notice to foreign-domiciled individuals who resided in countries where an MLA request is necessary to make contact.

The Government did not also provide mass direct notice to what it believed were a possible million accountholders of BTC-e. *See* Complaint at ¶ 59 (noting BTC-e had over one million customers and processed over $9 billion worth of transactions). First, these accountholders were identified in the BTC-e database only by their email addresses, which provided no certainty as to their locations. Countries have their own rules for when, and under what conditions, their citizens and residents can be contacted by the U.S. Government regarding a U.S. case. Furthermore, the Government assessed that sending mass notice to all these email addresses would not be a particularly effective way of providing notice, since these email addresses were old addresses (circa 2017 or earlier) and many of them were likely "burner" addresses that their owners no longer

4

check. One of the claimants in this case (Tim Renzetti) made this very point in his recent motion to file a late claim, writing that "no reasonable person monitors a decade-old email address tied to a seized exchange."[4] Finally, the Government assessed that sending notice to all these email addresses would be very time-consuming and expensive. The Government's regular paralegal staff does not have the capacity to manually send emails to up to a million individuals. Weighing all these concerns, the Government elected (at the outset of this case) not to send mass email notice to all of the email addresses on the BTC-e servers. *See United States v. $378,625.12 in Cryptocurrencies Seized From Binance User Id 201812576*, No. 2:25-CV-64, 2026 WL 817876, at \*3 (E.D. Tenn. Jan. 9, 2026) ("the notice standard of Supplemental Rule G does not require the government to exert 'heroic efforts' to provide direct notice but merely requires that the minimum notice requirement of due process be met."); *accord U.S. v. Alvarez*, 710 F.3d 565, 567 (5th Cir. 2013) (citing *Dusenbery v. United States*, 534 U.S. 161, 170-71 (2002)).

However, as a result of the Government's efforts to validate accounts and assess balances for the BTC-e accountholders who have filed claims in this action or submitted petitions for remission, U.S. law enforcement ran a query in June 2026 that found that among the more than one million user accounts, approximately 300,000 were accounts that had a positive balance at the time the Government seized BTC-e's servers in 2017. While this is still a very large number, the Government takes its notice obligations seriously and, after further consultation with technical personnel, concluded that it may be operationally possible and not prohibitively expensive to engage a vendor to send mass email notice to BTC-e accountholders. The Government concluded that it is likely possible to provide notice to accountholders with email addresses from U.S.-based service providers (Gmail, etc.), though, upon revisiting the issue with the DOJ's Office of

---

[4] Renzetti's motion has not yet been posted to CM/ECF; he emailed a courtesy copy to the Government.

International Affairs ("OIA"), determined that certain permissions may still be necessary for accountholders believed to be located in foreign countries. For other accountholders with demonstrably foreign email addresses, further permissions may be needed. The Government needs to exercise particular care regarding the very large number of accountholders with .ru email addresses, indicating Russian email providers and servers. The Government continues to analyze the accountholder email addresses and consult with its Mutual Legal Assistance experts at OIA on whether any legal approvals (MLA or otherwise) are required. In sum, the Government does plan to send direct email notice to as many of the aforementioned 300,000 BTC-e accountholder email addresses as it realistically can, given the foreign issues, and consistent with its responsibility to provide notice to potential claimants.

During this re-notice period, the Government will continue to try to resolve and narrow the other issues in this case. The Government will continue discussions with Mt. Gox's counsel to address the Mt. Gox claim through either a voluntary claim withdrawal or by filing a motion to strike. The Government will seek to bring any other motions to strike or for summary judgment as to discrete subsets of the Defendant Assets, if appropriate. The Government will also continue its efforts to provide account records to the accountholder Claimants as part of civil discovery and will report to the Court on the progress of the notice process.

Of course, if the Court has different views about whether the Government should or needs to provide additional notice, the Government would obviously follow the Court's guidance.

### D. Proposed Scheduling Order

Bearing in mind the above-cited factors, the Government proposes the following case schedule going forward:

- On or before August 31, 2026: the Government to provide existing Claimants with discovery packets consisting of their account records.

- September 15, 2026: the Government and Mt. Gox to file Joint Status Report regarding potential voluntary resolution of the Mt. Gox claim and proposed briefing schedule for Government motion to strike if no resolution reached.

- Although the Government anticipates that the further email notice described herein may be completed within a period of roughly two to four months from the date that a qualified vendor is approved to provide the services, the Government has been advised that an accurate assessment of the time required will not be possible until after such a vendor is selected and can assess the scope of the task assigned. Accordingly, the Government proposes to file a Status Report within twenty-one days of award of a contract to a vendor to provide the Court with a further update on the anticipated time period required to complete the additional notice. Within that Status Report, the Government will also report on its efforts regarding requests for authorizations (including any needed MLA authorizations) to provide direct notice to potential recipients located overseas and potential alternative notice mechanisms, such as further publication notice through Russian-language cryptocurrency websites or other publications.

- Within 30 days of the close of the claims period, the parties to provide a Status Report regarding the scope of claims, the prospects for voluntary resolution, whether further pre-discovery determinations are necessary, or whether a proposed schedule for discovery should be entered.

- As to the L.R. 16.3(c) issues in Section (E) of the Burch Claimants' insert (*see infra*), the Government does not interpret the Court's June 10 Minute Order to require itemization of every topic in L.R. 16.3(c). The Government opposes at this time the deadlines that the Burch Claimants set forth in paragraphs 6, 8, and 9 of their Section (E) proposed schedule.

E.  *The Government's Decision About Striking Untimely Claims*

As the Court is aware, the Government has previously taken the position that claims filed after December 12, 2025, are untimely. Dkt. 298 at 4-5. Accordingly, the Government has opposed various Claimant motions for leave to file claims after that date. *See* Dkts. 317, 321, 332, 361, 368. There also are several Claimants who, after filing claims, failed to file Answers as required under the Supplemental Rules,[5] which also constitutes grounds for dismissal of claims. *See United States v. All Assets Held in Acct. No. XXXXXXXX*, No. CV 13-1832, 2014 WL 12810522, at *6 (D.D.C. July 3, 2014) ("Supplemental Rule G(5) . . . sets forth the deadlines for filing a verified claim and for filing an answer to a complaint. Courts require 'strict compliance' with these statutory standing requirements.").

However, given the Government's decision to provide additional notice, the period for filing claims will reopen to permit such newly-notified claimants to file a claim. Under such circumstances, the Government no longer finds it prudent to seek dismissal of claims filed after the close of the initial claims period. Accordingly, the Government withdraws its opposition to pending motions for leave to file late claims (Dkts. 317, 321, 332, 361, 368) and has determined

---

[5] These claimants are Sergey Mayzus (Dkt. 156); Andrew Hardy (Dkt. 281); Teyara Hardy (Dkt. 280); Armen Karapetian (Dkt. 242); Dejan Deak (Dkt. 213); John Weber (Dkt. 221); Jonathan Williams (Dkt. 271); Marco Stickan (Dkt. 238); Matte Thibault (Dkt. 338), and Olga Solodina (Dkts. 166, 263).

not to move to strike late claims that have already been filed in this case. Should putative Claimants file untimely claims following the close of the reopened claims period, or if any Claimants fail to file Answers or otherwise comply with the Supplemental Rules, the Government reserves the right to seek dismissal of such claims as untimely or for any other reason authorized by law.

### Position of Claimant Nobuaki Kobayashi, as the Mt. Gox Bankruptcy Trustee[6]

The Mt. Gox Bankruptcy Trustee (the "Trustee") is unable to take a position on the Government's proposed schedule for purposes of today's filing. The Government and counsel for the Trustee held a telephonic meet and confer conference regarding the Government's proposed position at 10:30am EDT on Monday, July 20, 2026. Given the 13-hour time difference for the Trustee in Tokyo, Japan, the Trustee has been unable to receive the results of this conference and confirm his position in light of it. For that reason, the Trustee respectfully requests that he be permitted to express his position on the proposed Joint Status Report in a separate filing on or before Wednesday July 22, 2026.

### Position of Burch Claimants

Position of Claimants Joseph Barrett, Marc Andre Guindon, Juan Mateo Lorenzo, Aron Opthun, Kirk Ouimet, Michael Barth Vik, Felix Correa, Radoslav Barka, John Barnes, Mario Casar, Zachary Glynn, Daniel Groves, Oleksandr Harshyn, Brandon Jurewicz, Weibin Lam, Bradley Marion, Maximilian Parusel, Kevin Tillbrook, Ryan Underwood, David Weeks, Lennart Mattias Werner, Aleksandr Linenko, Bruce Tiemann, Kazjin Yasin Salih, Benjamin James Moran,

---

[6] *See* Dkt. No. 40 (claim of Mt. Gox Bankruptcy Trustee).

Paul Rhodes, Aldis Rigerts, Eric Sandri, and Nikos Verschore (hereafter, the "Burch Claimants" for efficiency)[7]:

The Government's portion of the Joint Status Report does not address several of the scheduling topics required by LCvR 16.3(c). In the interest of assisting the Court and narrowing any disputes at the outset, the Burch Claimants respectfully set forth their positions on each of those topics below, including a proposed schedule in Section E.

### A.    Discovery

Burch Claimants accept the Government's commitment to produce account record discovery packets to existing Claimants on or before August 31, 2026, and respectfully request that the Court so order.

Burch Claimants will serve written discovery, including interrogatories, requests for production, and requests for admission, on both the Mt. Gox Trustee and the Government: (a) targeted discovery to the Mt. Gox Trustee on its tracing theories and the factual basis for its claim; and (b) discovery to the Government on account balance verification and disclosure, the Government's intentions and efforts regarding the foreign-denominated defendant properties (B-F), and the Government's own assessment of, and position as to, the Mt. Gox Trustee's claim. Burch Claimants acknowledge that there will be some overlap in substance since the Government intends to produce account records and to reach agreement or litigation with the Mt. Gox Trustee regardless, but formal written requests and responses remain necessary to properly represent their clients. Burch Claimants further reserve the right to serve additional or supplemental written discovery as permitted by the Federal Rules of Civil Procedure as information comes to light.

### B.    Mt. Gox: September 15 Deadline Accepted

---

[7] Edward Burch is one of a group of attorneys representing these claimants.

Burch Claimants share the Government's view that resolution of the Mt. Gox claim is essential to moving this case forward, and accept the proposed September 15, 2026 joint status report deadline. Burch Claimants note their disagreement with the legal sufficiency of the Mt. Gox Trustee's claim and reserve all rights to challenge it. As noted, Burch Claimants intend to serve written discovery on and regarding the Mt. Gox Trustee claimant, and intend to move to strike the Mt. Gox claim if it is not voluntarily resolved by September 15, 2026.

C.      *Burch Claimants Strongly Oppose Reopening the Notice Period*

Burch Claimants firmly oppose the Government's proposal to reopen the notice period. The proposed re-notification of up to 300,000 potential claimants is legally unnecessary and would inflict severe prejudice on existing Claimants who have waited nearly a decade for resolution of this matter.

1.      *The Government Already Satisfied Its Notice Obligations, and Its Own Authority Forecloses Re-Notice.*

Supplemental Rule G(4)(a) requires publication notice, which the Government provided by posting this action on www.forfeiture.gov through the close of the claims period. Dkt. 292. Supplemental Rule G(4)(b)(i) requires the government to send notice "to any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim under Rule G(5)(a)(ii)(B)." Supp. R. G(4)(b)(i). The Government provided direct notice to approximately 100 known BTC-e accountholders who had affirmatively contacted the Government since 2017, precisely the universe of persons who reasonably appeared to be potential claimants at the time. The Government's due process rationale for re-notice fails on its own terms. Rule G(4)(b)(i)'s direct-notice obligation is keyed to "the facts known to the government before the end of the time for filing a claim" -- not facts the Government later

11

discovered, or chose to analyze, after the claims period closed. *Id.* Having satisfied that standard at the time, the Government cannot bootstrap post-hoc server analysis into a new constitutional obligation that restarts the clock for 300,000 people. The Government's own cited authority forecloses the argument: "the notice standard of Supplemental Rule G does not require the government to exert 'heroic efforts' to provide direct notice but merely requires that the minimum notice requirement of due process be met." *United States v. $378,625.12 in Cryptocurrencies Seized from Binance*, No. 2:25-CV-64, 2026 WL 817876, at *3 (E.D. Tenn. Jan. 9, 2026). If the existing notice was constitutionally sufficient when the complaint was filed, and the Government's own authority says it was, newly discovered server data does not retroactively render it insufficient now. Moreover, the Government's own status report concedes that Vinnik publicized this case among the Russian cryptocurrency community, that claimant counsel advertised the claims process extensively, and that this case received widespread media and social media coverage around the world,[8] all of which further confirms that the existing claimant pool is the appropriate universe of claimants.

---

[8] In response to recent untimely claims asserting that there was no media coverage of this case in Malaysian or Singaporean news outlets, Claimants note that both Malaysian and Singaporean outlets in fact covered this case extensively. From Malaysia:
Malay Mail (Malaysia), 14 Feb 2025 — "US releases crypto kingpin Alexander Vinnik as part of an exchange deal with Russia"
The Star (Malaysia), 12 Feb 2025 — "US to release Russian Alexander Vinnik as part of exchange that freed Fogel - New York Times"
The Star (Malaysia), 13 Feb 2025 — "Who is Alexander Vinnik, the Russian prisoner being traded for American Marc Fogel?"
New Straits Times (Malaysia), 13 Feb 2025 — "Crypto kingpin Alexander Vinnik exchanged for US teacher in Russia Deal"
Singapore:
Several Straits Times (Singapore) articles mention BTC-e over the years
The Straits Times (Singapore), 13 Feb 2025 — "Who is Alexander Vinnik, the Russian prisoner being traded for American Marc Fogel?"

*2.        There Is No Procedural Mechanism for Unilateral Re-Notice, and the Government's Own Prior Representations Foreclose the Relief It Now Seeks.*

Supplemental Rule G(4) does not provide a mechanism for reopening a closed notice period. The Government's announcement in a joint status report, without a motion, legal briefing, or court order, is not a proper vehicle for this extraordinary step. Moreover, the Government's own prior representations to this Court directly foreclose the relief it now seeks. In December 2025, the Government urged this Court to set a final cut-off date of December 12, 2025 for all claims, stating that "there must be finality as to the universe of claimants, particularly since an ever-expanding universe of claimants makes it impossible for the Government to evaluate the claims or suggest a framework for orderly resolution of this case through settlement or litigation," and that "[a]n ever-expanding universe of claimants is also inconsistent with Rule G, which sets claim deadlines precisely so the universe of litigants becomes fixed at an early stage of the case." Dkt. 298 at 4-5. The Government further warned that "late-filed claims not only increase burdens on the Court and Government but also may affect the extent of relief for other claimants who timely filed claims," and that "untimely claims will prejudice and protract these proceedings because an ever-expanding universe of claimants will delay the Government's evaluation of claims, delay and complicate potential frameworks for settlement, and risk prejudice to claimants who did file on time." Dkt. 298 at 3-4. The Government cannot now propose to notify 300,000 additional potential claimants while disavowing the very warnings it made to this Court seven months ago. If the Government believes re-notice is legally required, it should file a formal motion explaining the legal basis,

---

The Straits Times (Singapore), 13 Feb 2025 — "Russian Alexander Vinnik back in Moscow after prisoner swap, RIA news agency says"

scope, cost, and proposed timeline so that Claimants may be heard. This Court should not authorize an indefinite extension of this proceeding on a proposal embedded in a status report.

        3.      *Re-Notice Would Inflict Severe, Measurable Prejudice on Existing Claimants.*

This Court has already found that "Claimants have shown that they would likely be prejudiced by further delay." June 10, 2026 Minute Order. Reopening the notice period to up to 300,000 potential new claimants would: extend this proceeding well into 2027 or beyond with no guaranteed endpoint; dilute existing Claimants' pro rata recovery by an unknown but potentially enormous factor; overwhelm the Court and parties with an unmanageable volume of new claimants; and eliminate any realistic prospect of a negotiated settlement among the existing manageable claimant pool. The depreciation of the res compounds this prejudice in concrete, quantifiable terms. The 925.94 bitcoin comprising Defendant Property A was worth approximately $99.3 million when the Complaint was filed in June 2025, and had already fallen to approximately $71.4 million by May 2026, a loss of nearly $28 million in under a year. As of July 17, 2026, bitcoin was trading at approximately $63,000, valuing Defendant Property A at approximately $58.3 million, a loss of over $41 million, more than 40% of its value, since the Complaint was filed thirteen months ago. That loss falls entirely on Claimants, innocent depositors who have already waited nearly a decade for the return of their property. Courts have consistently held that open-ended delays in forfeiture proceedings are disfavored and constitutionally suspect. *United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1163 (2d Cir. 1986); *United States v. $8,850*, 461 U.S. 555, 564-65 (1983); *Culley v. Marshall*, 144 S. Ct. 1142, 1146 (2024); *United States v. Real Property Known as 223 Spring Water Lane*, No. 6:18-CV-315, 2021 U.S. Dist. LEXIS 261147, at *10 (E.D. Ky. Feb. 26, 2021); *United States v. $463,497.72 from Best Bank Account*, 604 F. Supp. 2d 978, 982 (S.D. Mich. 2009).

D.    *Pre-Discovery Motions*

Claimants do not anticipate filing pre-discovery motions at this time. Burch Claimants specifically reserve their right to file motions directed to other claimants' standing as discovery progresses, but note it currently appears more appropriate to bring any such motions after some discovery is complete.

Claimants reserve their right to file a motion to dismiss this action on statute of limitations grounds, as this action was filed on June 30, 2025, nearly eight years after the 2017 seizure of the Defendant Properties, and outside the applicable five-year limitations period mandated by 19 U.S.C. § 1621. Claimants placed the Government on notice of this defense in September 2025. Claimants, however, do not believe such a motion is appropriate or helpful at this time given the unique circumstances of this case.

E.    *Burch Claimants' Proposed Scheduling Order*

Consistent with LCvR 16.3(c), the Burch Claimants propose the following schedule and positions on the matters required to be addressed in the Parties' Joint Status Report and Proposed Scheduling Order:

1. **Dispositive Motions (LCvR 16.3(c)(1))**. The Burch Claimants do not believe discovery should be stayed pending any dispositive motion. No dispositive motion is currently pending, and to the extent any party files one, Claimants propose that discovery proceed in the ordinary course absent further order of the Court.

2**. Joinder of Parties / Amendment of Pleadings (LCvR 16.3(c)(2))**. The Burch Claimants propose that any motion to join additional parties or amend the pleadings be filed within 60 days of entry of the Scheduling Order.

3. **Magistrate Judge Referral (LCvR 16.3(c)(3))**. The Burch Claimants do not consent to referral of this action to a Magistrate Judge for all purposes, including trial.

4. **Settlement (LCvR 16.3(c)(4))**. The Burch Claimants believe a negotiated resolution remains possible, but consider it premature to assess realistically until the Mt. Gox Trustee's claim is resolved and the account-record discovery described in Section A above has been produced and reviewed.

5. **Alternative Dispute Resolution (LCvR 16.3(c)(5))**. The Burch Claimants do not propose referral to the Court's ADR program at this time, given the unresolved threshold issues identified above, but are willing to revisit the question following the September 15, 2026 status report.

6. **Summary Judgment / Motion to Dismiss Briefing (LCvR 16.3(c)(6))**. The Burch Claimants propose that any dispositive motions be filed no later than 30 days after the close of fact discovery, with oppositions due 21 days thereafter and replies due 14 days after service of the opposition, consistent with LCvR 7(b) and (d).

7**. Initial Disclosures (LCvR 16.3(c)(7))**. This action is a civil forfeiture action in rem arising from a federal statute and is therefore exempt from the initial disclosure requirements of Fed. R. Civ. P. 26(a)(1)(B)(ii). The Burch Claimants do not propose any modification of that exemption.

8. **Discovery Plan and Completion Date (LCvR 16.3(c)(8))**. As described in Section A, the Government has agreed to produce account-record discovery packets to existing Claimants on or before August 31, 2026. The Burch Claimants further propose that all fact discovery, including the written discovery described in Section A directed to the Government and the Mt. Gox Trustee, be completed within 120 days following the September 15, 2026 status conference, subject to

adjustment based on developments concerning the Mt. Gox Trustee's claim. The Burch Claimants do not propose any limitation on the number of interrogatories, depositions, or requests for admission beyond those set forth in the Federal Rules of Civil Procedure.

9. **Expert Disclosures (LCvR 16.3(c)(9))**. The Burch Claimants propose that any expert disclosures required by Fed. R. Civ. P. 26(a)(2) be served within 30 days after the close of fact discovery, that rebuttal expert disclosures be served within 30 days thereafter, and that expert depositions be completed within 30 days following service of rebuttal disclosures.

10. **Class Action Procedures (LCvR 16.3(c)(10))**. Not applicable.

11. **Bifurcation (LCvR 16.3(c)(11))**. The Burch Claimants do not propose bifurcating discovery or trial at this time.

12. **Pretrial Conference (LCvR 16.3(c)(12))**. The Burch Claimants propose that a pretrial conference be scheduled by the Court following the close of fact and expert discovery and resolution of any dispositive motions.

13. **Trial Date (LCvR 16.3(c)(13))**. Given the unresolved status of the Mt. Gox Trustee's claim and the Government's proposal regarding re-notice, addressed in Section C above, the Burch Claimants propose that the Court defer setting a firm trial date until the pretrial conference.

14. **Other Matters (LCvR 16.3(c)(14))**. The chart identifying each Claimant and their respective counsel of record has been separately compiled by the Parties and is submitted concurrently with this Report.

**Position of Smith Claimants**

The Claimants represented by Daniel Smith ("Smith Claimants") join the position of the Burch claimants. The Smith Claimants are:

1.Raymond Schettini
2. Mahdi Nooshafarin

17

3. Jacob Campbell
4. Mohamed Parvez Noorani
5. Bjoern Erik Mol
6. Martin Horak
7. Paul Capling
8. John Correa
9. Christopher Callejo
10. Sarah Winters
11. Richard Peterson
12. Changjie Liu
13. Thomas Schmidt
14. Thomas West
15. Tim Withag
16. Patrick Wauthier
17. Timofey Fedotov
18. Jaacov Israel Bar Hanin
19. Sajad Ghanizada

**Position of Claimants Jason Little and Matthew Williams**

Claimants Jason Little and Matthew Williams (the "LW Claimants") hereby submit their position as follows:

*A. Discovery and Claimant Chart*

The LW Claimants agree with the Government's intention to produce discovery packets to all existing claimants on or before August 31, 2026. The LW Claimants have already served written discovery on the government, and reserve the right to renew this written discovery at that point.

*B. Mt. Gox Claims*

The LW Claimants appreciate the government's commitment to resolve the claim of the liquidators of Mt. Gox in a timely manner. Mt. Gox's claim is facially invalid under binding circuit precedent, explicitly relying on a constructive trust theory that the D.C. Circuit has plainly stated is not a valid theory of standing in this court. *See, e.g., United States v. Emor*, 785 F.3d 671, 679 n.2 (D.C. Cir. 2015)("[T]his Court does not recognize the constructive trust doctrine in federal criminal forfeiture proceedings"). And based on the government's statements, neither does it appear that Mt. Gox will

be able to argue that the actual cryptocurrency stolen from it was still held either in the seized BTC-e operating wallets, or on BTC-e at all. For example, in a prior Status Update, the government characterized Mt. Gox's claim as based on cryptocurrency that merely "transited through BTC-e." Dkt. 328 at 1. The LW Claimants agree with the government that it does not benefit anyone for a deficient claim seeking effectively all of the defendant *res* to linger in this action.

### C. The Government's Decision to Provide Additional Notice to Potential Claimants

The LW Claimants object to the Government's request to reopen the notice period in this action. Rule G does not provide for such a procedure, and even if it did, the Court controls the progress of this action and should exercise its discretion to prohibit what amounts to a do-over of the Rule G(5) process, which would inflict significant prejudice on the LW Claimants.

The government is, in effect, trying to turn this civil forfeiture proceeding into the broad-based administrative remission process codified under 28 C.F.R. Part 9. While perhaps well-intentioned, that is simply not how the civil forfeiture statutes apply. If the government feels impelled to provide further notice, the government can do so and accept any petitions for remission that it receives, and the LW Claimants have no doubt that government will adequately represent the positions of all petitioners in any settlement negotiations.

The Burch claimants ably explain why this reopened notice proposal is legally flawed, and the LW Claimants join that argument. There is no injustice in holding potential claimants to the notice period set forth in Rule G, and notice by publication is codified in Rule G for that reason. The government is correct that this case has been aptly publicized – both officially and through significant media attention. And as Rule G(4)(b)(IV), states, "[a] potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the

government's failure to send the required notice." Any future late-filing claimants can be addressed on a case-by-case basis assessing their justification for delay.

But even if the government's proposal complied with governing law and Rule G, the Court should nonetheless exercise its discretion to reject this proposal for numerous practical reasons.

First and foremost, this case is plainly threatening to overwhelm the resources of government counsel as is, and kicking the can down the road only to add dozens or hundreds more potential claimants is all but certain to grind this action to a halt. Despite the current roster of claimants being set for roughly six months, the government still has not been able to provide the parties with a summary of all claimants' BTC-e balances, which is the single most important piece of information for the parties to have productive settlement discussions on a possible *pro rata* resolution. This is certainly not through a lack of hard work on the part of government counsel and investigating agents, but it is the reality of this action and one that will only get worse if dozens or more new claimants come forward. Put another way, this action is barely moving forward, and adding many more parties is not going to help that.

Rather, the government appears to be opting for this solution as a means to avoid litigation with the current slate of late claimants, but misses a far simpler solution – the government can simply opt not to challenge the timeliness of these claims. Rule G's language governing motions to strike is permissive, not mandatory ("[T]he government *may* move to strike a claim or answer … for failing to comply with Rule G(5)")(emphasis added). Of course, the Court has the final say on timeliness under Rule G, and can direct any late-filing parties to explain their delay, but none of this requires the Court to permit a host of new parties to file even further delayed claims.

If the government is concerned about other accountholders potentially being left out, the government can certainly provide them with notice of the petition for remission process, which

has no set deadlines. The LW Claimants are confident that the government would not enter any settlement of this action that did not protect the interests of petitioners.

Finally, the interests of accountholders who might file claims should not be prioritized over those like the LW Claimants who actually have. Knowingly or otherwise, the government committed a grave injustice against many BTC-e users. It seized their property nearly a decade ago—apparently losing much of it in the process—and then spent nearly a decade giving them no notice or opportunity to seek the return of their funds. During this time these assets multiplied in value, in many cases into the kind of life-changing money that could dramatically improve people's lives – yet their funds remained locked away by the government without process or explanation. Mortgages could have been paid off, children put through college, hospital bills paid, and family members aided in retirement, but none of this happened because the government opted to treat all BTC-e users as criminals. The delay has gone long enough.

   *D.  Proposed Scheduling Order*

The LW Claimants are in agreement, save for the previously stated objection to reopening the notice period, with the Government's Proposed Scheduling Order.

   *E.  The Government's Decision About Striking Untimely Claims*

As noted above, the LW Claimants have no objection to the Government's intention not to move to strike late claims that have already been filed in this case, and can elect to take this position with seeking to reopen the proscribed notice period under Rule G.

**Position of Claimant Anderson Thomas**

   *A.  Discovery and Claimant Chart*

21

Claimant Thomas agrees with the Government's intention to produce discovery packets to existing Claimants on or before August 31, 2026, and reserves the right to serve written discovery on the Government after review of same.

### B.  Mt. Gox Claims

Claimant Thomas agrees with the Government's proposed September 15, 2026, deadline for a Joint Status Report from the Government and Mt. Gox if no resolution has been reached between the two.

### C.  The Government's Decision to Provide Additional Notice to Potential Claimants

Claimant Thomas respectfully objects to the Government's decision to reopen the notice period.

### D.  Proposed Scheduling Order

Claimant Thomas is in agreement, save for the previously stated objection to reopening the notice period, with the Government's Proposed Scheduling Order.

### E.  The Government's Decision About Striking Untimely Claims

Claimant Thomas has no objection to the Government's intention not to move to strike late claims that have already been filed in this case.

## Position of Claimant Eric Maxey

### A.     Discovery

Claimant has no objection to receipt of the account record discovery packet from the Government by August 31, 2026, as anticipated by the Government, and respectfully requests the Court order production of the account record discovery packets to existing claimants by August 31, 2026.

### B.     Mt. Gox Claims

Claimant objects to the Government's view that resolution of the Mt. Gox claim is essential to moving this case forward due to lack of sufficient explanation by the Government. The Government asserts, "As previously noted, determination of the Mt. Gox[9] claim could have a profound impact on the scope and possibility of a negotiated resolution of other claims in this action. See Dkt. 328; February 20, 2026 Minute Order." Neither of these documents relate to the impact of Mt. Gox' claim, or the scope and possibility of a negotiated resolution of other claims in this action. Claimant seeks clarification and confirmation on how the Government will ensure a resolution with Mt. Gox won't place a higher priority on Mt. Gox as a claimant as compared to the other claimants in this action.

Claimant joins the Burch Claimants noting their disagreement with the legal sufficiency of the Mt. Gox Trustee's claim and reserves all rights to challenge it.

**C.      *The Government's Decision to Provide Additional Notice to Potential Claimants***

Claimant objects to the Government's reversal of its decision to reopen the notice period. Claimant joins the position of the Burch Claimants on this issue and incorporates by reference the three Burch Claimant arguments that:

1. The Government Already Satisfied Its Notice Obligations, and Its own Authority Forecloses Re-Notice;

2. There is no Procedural Mechanism for Unilateral Re-Notice, and the Government's Own Prior Representations Foreclose the Relief It Now Seeks; and

3. Re-Notice Would Inflict Severe, Measurable Prejudice on Existing Claimants.

---

9 The "Mt. Gox claim" is the claim of Nobuaki Kobayashi as bankruptcy trustee of Mt. Gox (Dkt. 40).

Claimant notes whether the Government may have placed itself at risk from later litigants who claim to have not received proper notice is not now before this Court and no delay should be allowed for such reconsideration.

**D.      *Proposed Scheduling Order***

Claimant does not plan to file pre-discovery motions at this time but reserves his right to file motions on other claimants' standing.

**E.      *Claimant Joins the Burch Claimants' Proposed Scheduling Order***

Claimant joins the Burch Claimants' proposed schedule and positions on the matters required to be addressed in the Parties' Joint Status Report and Proposed Scheduling Order. Proposed Scheduling Order concerning:

1.  Dispositive Motions (LCvR16.3(c)(1);

2.  Joinder of Parties/Amendment of Pleadings (LCvR 16.3(c)(2);

3.  Magistrate Judge Referral (LCvR 16.3(c)(3).

4.  Settlement (LCvR 16.3(c)(4);

5.  Alternative Dispute Resolution (LCvR 16.3(c)(5).

6.  Summary Judgment/Motion to Dismiss Briefing  (LCvR 16.3(c)(6);

7.  Initial Disclosures (LCvR 16.3(c)(7);

8.  Discovery Plan and Completion Date (LCvR 16.3(c)(8);

9.  Expert Disclosures (LCvR 16.3(c)(9);

10. Class Action Procedures (LCvR 16.3(c)(10);

11. Bifurcation (LCvR 16.3(c)(11);

12. Pretrial Conference (LCvR 16.3(c)(12);

13. Trial Date (LCvR 16.3(c)(13); and

14. Other Matters (LCvR 16.3(c)(14).

### F. *The Government's Decision About Striking Untimely Claims*

Claimant objects to the Government's reversal on its decision that claims filed after December 12, 2025 were untimely based on the Government's own arguments to strike untimely claims. Dkt. 298 at 4-5. Claimant objects to the Government's decision to provide additional notice, allowing the period for filing claims to reopen.

## Position of Dynamis Claimants

Claimants Adam Muntner, Alexander Andebeek, Andreas Migotz, Hadrien Hislaire, Michael Laderman, Patricia Moore, and Robert Knutson (collectively, the "Dynamis Claimants") submit the following position:

### A. *Discovery and Claimant Chart*

The Dynamis Claimants are in agreement with the Government's proposal to serve discovery packets to Claimants before the end of August. The Dynamis Claimants served requests for production and interrogatories on the Government on December 8, 2025 and reserve the right to serve additional discovery.

### B. *Mt. Gox Claims*

The Dynamis Claimants agree that the pendency of the Mt. Gox claim has profoundly impacted the prospects for resolving this matter and supports the Government's proposal for a September 15, 2026 joint status report. The Dynamis Claimants reserve all rights to challenge the claim brought by the Mt. Gox Trustee.

### C. *The Government's Decision to Provide Additional Notice to Potential Claimants*

The Dynamis Claimants object to the Government's proposal to reopen the notice period and respectfully incorporate the arguments made by the Burch Claimants and the LW Claimants about why such a decision is unsupported by law and would prejudice the numerous existing Claimants in this longstanding dispute.

*D. Proposed Scheduling Order*

The Dynamis Claimants agree with the Government's Proposed Scheduling Order, other than the proposal to reopen the notice period.

*E. The Government's Decision About Striking Untimely Claims*

The Dynamis Claimants take no position with respect to the Government's decision about the handling of untimely claims.

## Position of Claimant Travis Olsen

Claimant Travis Olsen ("Claimant Olsen"), by and through counsel, respectfully submits the following position with respect to the matters addressed in the Joint Status Report.

**A. Discovery and Claimant Chart**

Claimant Olsen agrees with the Government's proposal to produce individual account-record discovery packets to existing claimants on or before August 31, 2026, and respectfully requests that the Court so order and set that date as firm. Claimant Olsen's discovery packet is particularly important to his claim, as Claimant Olsen has asserted lawful ownership of no less than eighty (80) Bitcoin purchased through a regulated U.S. exchange and transferred to his personal BTC-e account for investment purposes.

**B. Mt. Gox Claims**

26

Claimant Olsen agrees that resolution of the claim of Nobuaki Kobayashi, as bankruptcy trustee of Mt. Gox, is essential before any negotiated global resolution can be meaningfully assessed, since that claim, if allowed, would materially affect the scope of Defendant Assets available to accountholder claimants, including Claimant Olsen. Claimant Olsen supports the Government's proposed September 15, 2026 Joint Status Report deadline concerning the Mt. Gox claim, and joins the Burch Claimants and other claimants in reserving all rights to challenge the legal and factual sufficiency of that claim.

### C. The Government's Decision to Provide Additional Notice to Potential Claimants

Claimant Olsen objects to the Government's proposal to reopen the notice period to reach an estimated 300,000 additional BTC-e accounts, and joins the arguments raised by the Burch Claimants that: (1) the Government already satisfied its notice obligations under Supplemental Rule G(4) as of the close of the original claims period; (2) there is no procedural mechanism for the Government to unilaterally reopen notice through a status report, particularly where the Government previously urged the Court to fix the universe of claimants as of December 12, 2025; and (3) re-notice would inflict severe, measurable prejudice on existing verified claimants by diluting recovery from a res that has already depreciated by more than 40% in value since the Complaint was filed. Claimant Olsen respectfully submits that resolution of his own timely-filed, existing claim should not be made contingent on, or delayed by, the Government's newly proposed and open-ended re-notice campaign.

### D. Proposed Scheduling Order

Claimant Olsen agrees with the Government's Proposed Scheduling Order except for his objection to reopening the notice period as stated above.

### E. The Government's Decision About Striking Untimely Claims

Claimant Olsen's Verified Claim and Addendum were filed on September 11, 2025, and his Answer was filed on October 1, 2025, both well before the Government's December 12, 2025 cut-off for timeliness objections. Claimant Olsen takes no position on the Government's decision not to seek dismissal of other claimants' late-filed claims, as that decision does not bear on his own claim.

Claimant Olsen expressly reserves all rights, arguments, and defenses previously asserted in his Answer, including his innocent owner defense under 18 U.S.C. § 983(d) and his defenses based on the Government's undue and prejudicial delay in commencing this action. Claimant Olsen further joins the Burch Claimants in reserving the right to move to dismiss this action on statute of limitations grounds. The Complaint was filed nearly eight years after the 2017 seizure of the Defendant Properties and outside the five-year limitations period under 19 U.S.C. § 1621, consistent with the untimeliness and prejudicial-delay defenses already pled in Claimant Olsen's Answer. Claimant Olsen does not waive any of these rights, arguments, or defenses by joining in this Joint Status Report.

**Position of *Pro Se* Claimant Kevin Reilly**

Claimant Reilly does not oppose the Government's provision of additional notice, and appreciates the Government's withdrawal of its timeliness objections and its commitment to produce account records. Claimant respectfully submits the following positions:

1.  Discovery packets. The August 31, 2026 production date for individual account discovery packets should be incorporated in the Court's scheduling order as a date certain.

2.  Aggregate figures. The Government's disclosure that a June 2026 query of the BTC-e server data identified approximately 300,000 accounts with positive balances demonstrates

28

that aggregate queries of that data are feasible. Consistent with the Court's July 10, 2026 observation that confirming accurate information now would benefit all Parties, Claimant requests that the Government disclose, within 30 days, the aggregate customer balance figures by cryptocurrency denomination reflected in the server data as of July 25, 2017, together with a reconciliation against the amounts recovered in the operating wallet seizures.

3. Pending motions. The reopened notice period should not defer resolution of the fully briefed motions pending before the Court (Dkts. 353, 365, 375), except to the extent the Government's forthcoming production moots any of them in whole or in part.

4. Existing claimants' track and outside date. Resolution of existing verified claims should proceed on its own track and should not await the close of the reopened claims period. The reopened claims period should presumptively close by a date certain set by the Court, subject to extension for good cause shown, so that resolution of existing verified claims is not indefinitely deferred by vendor procurement or foreign-notice contingencies.

5. Mt. Gox claim. Any proposed resolution of the Mt. Gox claim should be presented on notice to all claimants, with an opportunity for accountholder claimants to be heard before approval.

6. Structured resolution. Given the anticipated scale of the claimant class following renotice, the parties' proposed schedule should include referral to mediation or appointment of a special master to administer claims verification and resolution.

7. Pro se group statement. The coordinating group of pro se claimants is preparing a joint statement of position, which will be filed as a short supplement within seven days, given the timing of the draft report's circulation.

**Position of *Pro Se* Claimant Simon de Dardel**

Claimant Simon de Dardel supports the Government's proposed schedule and respectfully requests that the reopened notice period not delay the resolution of claims already filed by existing accountholder Claimants.

**Position of *Pro Se* Claimant Michael Haworth**

Claimant Michael Haworth agrees with the Government's intention to produce discovery packets to existing Claimants on or before August 31, 2026. Claimant has no objection to the Government's decision to withdraw its opposition to pending late claims and not move to strike. Claimant respectfully requests that the reopened notice period not delay the resolution of claims already filed by existing accountholder Claimants.

**Position of *Pro Se* Claimant Radomir Polach**

Given my own experience with delayed international notice, I do not oppose the Government providing additional notice. However, I respectfully request that the additional-notice process not delay production of my account records or resolution of claims already filed.

In my view, it would be inequitable for the Mt. Gox claim to be resolved or given priority in a manner that reduces or delays recovery by bona fide BTC-e account holders whose own funds remain unrecovered. Any resolution of the Mt. Gox claim should fully preserve the rights of legitimate accountholders and should not occur at their expense.

Respectfully submitted,

30

MARGARET A. MOESER
CHIEF
MONEY LAUNDERING, NARCOTICS
AND FORFEITURE SECTION

*/s/ Joshua L. Sohn*
JOSHUA L. SOHN
ALLISON ICKOVIC
Trial Attorneys
Money Laundering, Narcotics
And Forfeiture Section
Criminal Division
United States Department of Justice
1400 New York Avenue NW
Washington, DC 20005
Telephone: (202) 353-2223
joshua.sohn@usdoj.gov

# CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2026, I caused the foregoing document to be served, via CM/ECF, to all counsel of record in this action. I also emailed a copy of this document to all *pro se* parties whose email addresses are readily available.


By:      */s/ Joshua L. Sohn*
          Joshua L. Sohn