EXHIBIT 1

Pelker Declaration

**In the High Court of New Zealand**
**Auckland Registry**

**I Te Kōti Matua O Aotearoa**
**Tāmaki Makaurau Rohe**

CIV-2020-404-60

| | |
|---|---|
| **Under** | Criminal Proceeds (Recovery) Act 2009 |
| **Between** | **Commissioner of Police**<br>**Applicant** |
| **And** | **Aleksandr Vinnik** of Fresnes Prison, Allée des Thuyas, 94260 Fresnes, France<br>**First Respondent** |
| **And** | **Canton Business Corporation** (also known as BTC-e) a duly incorporated company registered at Suite 1, Level 2, Sound & Vision House, Francis Rachel Street, Victoria, Mahe, Seychelles<br>**Second Respondent** |

---

# Affidavit of Catherine Pelker in opposition to interlocutory application for severance of restrained property

**June 2026**

---



**Alysha McClintock**
Te Rōia Matua a Te Karauna ki Tāmaki Makaurau
Crown Solicitor at Auckland

M R Harborow | C R Purdon
PO Box 90750, Victoria Street West, Auckland 1142
DX C P24063
T: +64 9 336 7500
Mark.Harborow@mc.co.nz
Conrad.Purdon@mc.co.nz

# Affidavit of Catherine Pelker in opposition to interlocutory application for severance of restrained property

I, **Catherine Pelker,** Trial Attorney for the United States Department of Justice, of Washington, D.C., United States, affirm:

## 1    Introduction

1.1    I am employed by the United States Department of Justice as a Trial Attorney for the Computer Crime and Intellectual Property Section.  My duties include prosecuting persons charged with criminal violations of the laws of the United States and representing the United States in Court.  I am one of the assigned prosecutors in the civil forfeiture action against BTC-e assets in case number 25-cv-02085 in the U.S. District Court for the District of Columbia (**Court**).

1.2    I provide this affidavit in opposition to an interlocutory application for severance of the restrained property held in New Zealand.

1.3    This affidavit should be read together with the affidavit I affirmed for the New Zealand proceedings on 7 April 2025.  It should also be read alongside the other affidavits provided by United States legal counsel in this proceeding, including the affidavit sworn by Joshua Sohn on 12 December 2025 in support of the application by the Commissioner for the New Zealand Police to extend the restraining orders in this proceeding (**December 2025 Affidavit**).

1.4    In this affidavit I outline the relevant progress in the United States civil proceedings since the December 2025 Affidavit, including with respect to relief claims, and particularly with respect to the relief claim filed by Mt Gox Co Ltd (**Mt Gox**).

1.5    Much of the information I refer to in my affidavit has also been communicated formally to the Court in the form of regular Status Reports.

1.6    Copies of the relevant Status Reports, being those dated 12 December 2025, 10 February 2026, 31 March 2026 and 20 May 2026, are annexed marked "**CP02-001**".

## 2    Overview of United States civil proceedings

**Background**

2.1    The United States Government (**Government**) filed a civil case on 30 June 2025 against various assets formerly held by or traceable to BTC-e, which was widely used for money laundering and other illicit activities.  In accordance with Supplemental Rule[1] G(4)(b), which requires notice to be given to known

---

[1]    Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

potential claimants, the Government provided direct notice of the case to approximately 110 individuals in July and August 2025. The majority of these individuals were alleged BTC-e account holders who had contacted the Government since BTC-e ceased operations in 2017.

2.2    Consistent with Supplemental Rule G(4)(b)(ii), the notice provided to these individuals stated that they needed to file claims within 35 days of the direct notice, and needed to file Answers no later than 21 days thereafter. The Government also provided publication notice of this case by posting it to www.forfeiture.gov., beginning on 4 July 2025 and running for 30 days thereafter. Consistent with Rule G(5)(a)(ii)(B), the publication notice stated that claims were due 60 days from the date of first publication (2 September 2025), with Answers being due 21 days thereafter.

2.3    The notices also explained the remission process, and how aggrieved individuals could file remission petitions.

2.4    A remission petition is a post-forfeiture avenue of relief that may be exercised by the Government to return victims' money. It is possible for a person, having failed in a relief claim pre-forfeiture, to nevertheless bring a successful remission petition. The remission petition process sits outside the formal litigation process. It is highly discretionary.

2.5    Claimants are able to file remission petitions online, or in writing, at any date that is on or before 60 days after a forfeiture order.[2] The petition need not be made in any particular form, but must include a description of the claimant's interest in the property, and be supported by documentation and any facts the claimant believes justify the return of property. Remission petitions must be signed under oath, on penalty of perjury.

**Overview of claims**

2.6    The total number of claimants who have now filed claims in this matter, seeking relief, exceeds 80. Besides the Mt Gox trustee, the other claimants are all purported BTC-e account-holders seeking to recover the value of their account balances when BTC-e was seized. This includes the appreciated current value of the cryptocurrency holdings in the relevant accounts.

2.7    Some of the claimants are represented by law firms while others remain unrepresented. This adds to the overall complexity of the proceeding and the management of claims.

2.8    There are several different varieties of cryptocurrency being claimed in the United States litigation. The cryptocurrency being claimed by the accountholder claimants includes:

(a)    73 per cent of the Bitcoin in U.S. Government custody;

(b)    649 per cent of the Litecoin;

(c)    8 per cent of the Novacoin;

---

[2]    For example, if a court orders forfeiture on October 31, 2026, a remission petition would be due by December 30, 2026 (60 days after forfeiture) and could be filed at any earlier date.

2

(d)     5,539 per cent of the Peercoin;

(e)     1 percent of the Namecoin;

(f)     47 per cent of the Ethereum; and

(g)     42 per cent of the Dashcoin.

2.9    Meanwhile, Mt Gox has filed a broad claim against *all* of the assets in the civil case, including those in New Zealand.  The quantum of cryptocurrency being claimed exceeds the total quantum of cryptocurrency available.  If all of the existing claims—including those of Mt Gox—are taken at their highest, the Government anticipates that in the context of a global settlement there is unlikely to be a sufficient pool of funds to service all of the claims.

**Late claims**

2.10   To establish statutory standing in a civil forfeiture action in the United States, a potential claimant must demonstrate that they have complied with the statutory requirements designated by Congress for contesting a civil forfeiture action.  A would-be claimant must, among other things, file a claim within the time periods prescribed by law.  This generally means 35 days after receipt of direct notice, or 60 days after the first publication, for parties who did not receive direct notice.

2.11   In this case, the deadline for parties who received notice by publication was 2 September 2025, 60 days after the Government first published notice of the case online.  Nevertheless, the Government estimates that at least 25 to 30 claims were filed late.  As claims have come in the Government has continued to examine the late-filed claims, to determine whether it would oppose their filing.

2.12   Late claims are problematic from the Government's perspective.  This is not only because they increase burdens on the Court and the Government, but also because they may affect the extent of relief available for other claimants who have filed timely claims (as well as claimants who elect to forego litigation and seek relief via post-forfeiture remission).

## 3    Investigation and settlement of claims

3.1    Since the December 2025 Affidavit was filed, the Government has undertaken further work to investigate and assess the claims filed, as well as to identify and progress potential routes to settlement.

3.2    The Government has sought to ascertain the account holdings of claimants and remission petitioners at the time of BTC-e's dissolution, as well as the potential for pro-rata distributions, taking into account:

(a)     the proportion of BTC-e's cryptocurrency in the Government's possession;

(b)     the quantity and denomination of this cryptocurrency; and

(c)     the size of the claims/petitions lodged by claimants and remission petitioners.

3

3.3     Because of the complexity of validating the claims and remission petitions, the Government has not yet been able to solidify a framework for resolution and distributions.

3.4     The volume and nature of transactions within accounts have posed challenges with respect to the evaluation of accountholder claims and petitions.  The claimants in this case did not merely deposit and withdraw cryptocurrency at BTC-e.  Some of them also engaged in large amounts of cross-currency trading on the BTC-e platform.  For example, one of the claimants conducted more than 1,700 cross-currency trades.  The large volume of cross-currency trading makes it substantially more difficult to calculate the claimants' and remission petitioners' account balances at the time of BTC-e's dissolution, and to evaluate the viability of potential frameworks for resolution of claims and petitions.

3.5     In particular, the Government has been evaluating the feasibility of a proposed settlement under which some or all of the seized cryptocurrency might be distributed pro rata to claimants and remission petitioners who can show they were bona fide non-criminal accountholders of BTC-e at the time of its dissolution, and who have not otherwise received compensation.  This process will take time because it requires the Government to assess the value of claims and remission petitions relative to the size of the recoverable cryptocurrency available.

**FBI investigation**

3.6     The FBI has been trying to ascertain the accountholder-claimants' account balances, including accounting for the high volume of cross-currency trading on the BTC-e platform.  The FBI has now made substantial progress in its assessment of the BTC-e account balances for the accountholder claimants and remission petitioners whose account records the Government was able to find.

3.7     The Government has been unable to locate BTC-e accounts for approximately 16 of the accountholder claimants and petitioners based on the information provided in the claims and petitions.  The Government plans to reach out to those individuals and/or their counsel to solicit further information about their alleged accounts. The Government will conduct this reach-out by mid-July 2026.

3.8     The Government believes that the New Zealand funds at issue are not traceable to any BTC-e depositor but instead comprise working capital of the BTC-e administrators themselves, including Aleksandr Vinnik.

**Stays**

3.9     On 20 February 2026, the case was stayed to allow the Government to make further progress with determining account balances and developing a potential settlement proposal.

3.10    On 29 April 2026, the Court ordered that the stay in this case be extended to 20 May 2026, noting this extension would not prejudice claimants.  The Court also observed the Government had shown that resolution of the Mt Gox claims was likely to increase the chances of a global settlement.  I discuss the Mt Gox claims in further detail below.

4

3.11    On 20 May 2026, the Government requested that the stay be extended for an additional 45 days, with another Government Status Report due at that time.

3.12    On 10 June 2026, the Court lifted the stay. A Joint Status Report is due by 10 July 2026, setting forth the parties' proposals for next litigation steps. The Government is currently conferring with the claimants about the content of this Joint Status Report.

# 4    Mt Gox claim

**Background**

4.1    On 20 August 2025 Nobuaki Kobayashi, in his capacities as the Bankruptcy Trustee and Foreign Representative and Trustee of the Second Civil Rehabilitation Proceeding of Mt Gox, submitted a verified claim for relief.

4.2    The claim asserts an ownership interest and constructive trust in *all* of the Defendant Assets in the U.S. case (**Defendant Assets**).  Mt Gox asserts that the Defendant Assets are traceable to specified unlawful activities, including the 2011 – 2014 hacks and thefts of bitcoin from Mt Gox, which led to Mt Gox's collapse and insolvency.  In essence, Mt Gox says that Mr Vinnik and other co-conspirators stole and illegally removed assets from their control, and then laundered those assets by sending them to BTC-e.

4.3    Mt Gox asserts an interest in the Defendant Assets as property stolen from Mt Gox, and in which Mt Gox has an interest.  In that regard, Mt Gox's claim appears to be brought on a fundamentally different basis to the accountholder claims.

4.4    Mt Gox has said that, if the Defendant Assets are returned to the Mt Gox Trustee, the Trustee would facilitate distribution of them to Mt Gox's creditors.

4.5    A copy of Mt Gox's claim for relief is annexed marked "**CP02-002**". As stated above, Mt Gox has broadly claimed against all the Defendant Assets in the U.S. case, including the New Zealand assets.

4.6    Mt. Gox has also filed a claim in at least one other U.S. cryptocurrency case: *United States v. Approx. 69,370 Bitcoin*, No. 3:20-cv-07811-RS (N.D. Cal.).

**Government position**

4.7    The most important issue from the Government's perspective is whether there is tracing (or other) evidence that the stolen Mt Gox cryptocurrency sent to BTC-e around 2011 – 2014 remained in BTC-e when the Government seized BTC-e's assets in 2017.  The Government says that the funds stolen from Mt. Gox and laundered through BTC-e *left* BTC-e years before the Government seized BTC-e's assets. Thus, Mt. Gox could have no legitimate legal or equitable claim on the BTC-e assets that the Government seized.

**Meetings with Mt Gox**

4.8     On 27 February 2026, the Government met with counsel for Mt Gox. The Government set out its position.

4.9     Mt Gox counsel and Government counsel have continued to trade information and evidence in an attempt to come to ground on this issue.

4.10    On 13 May 2026, the Government had its second meeting with counsel for Mt Gox. The Government is reviewing information provided by Mt Gox and plans to have a further meeting in July 2026.

4.11    The Government understands Mt Gox has commenced reaching out to counsel for the accountholder claimants to determine whether it is possible for them to present a joint proposal for the Government to consider, with a view to potential global resolution of the case.

**Impact of the Mt Gox claim**

4.12    Given the particularly large size of the Mt Gox claim, the Government's decision-making about how to treat it could significantly impact the prospects for, and nature of, a global settlement. Several of the accountholder-claimants have indicated they fear an equitable settlement would be impossible if Mt Gox's claim were to remain in the case, as the Mt Gox claim would "swallow up" or "greatly dilute" the accountholder claims. While the Government does not take a firm position at this time on whether the accountholder-claims are correct, it agrees that the fate of the Mt Gox claim in the United States is crucial for either settlement or merits litigation.

4.13    In short, the accountholder-claimants do not dispute that resolving the Mt Gox claim is critical to overall resolution of the case. The accountholder-claimants are interested in a cooperative resolution of the case, and agree that such cooperative resolution would seem infeasible until the Mt Gox claim is dealt with.

## 5    Future of the United States litigation

5.1     If Mt Gox and the accountholder claimants are able to agree on a division of the assets between them, the Government may consider a resolution that divides the seized U.S. cryptocurrency between Mt Gox and the accountholder-claimants in accordance with their agreement. Any such agreement would probably require all claimants to consent to forfeiture of the *foreign* Defendant Assets, including the New Zealand assets.

5.2     Conversely, if Mt Gox and the accountholder-claimants cannot reach agreement, the Government would continue facing the current situation in which Mt Gox and the accountholder-claimants both lay claim to the same asset pool. In that situation, the Government would likely move to strike Mt Gox from the case and may move to strike the accountholder-claimants as well. The lead argument for striking Mt Gox would be that the stolen Mt Gox funds left BTC-e years before the Government seized BTC-e's assets; therefore Mt Gox cannot have any legitimate claim to the BTC-e assets that the Government seized. The lead argument for striking the accountholder-claimants would be that, under U.S.

6

law, a depositor to a financial institution loses title to "his" assets, becomes a general unsecured creditor of the institution, and lacks standing to file a claim in a forfeiture case over the institution's assets.

5.3    The Government anticipates that, by the end of August 2026, it would be in a position to know whether the U.S. case is headed towards global settlement or whether it is headed towards motion-to-strike practice against Mt. Gox and/or the accountholder claimants.

**Affirmed** at Washington, D.C. this $\partial 4^{th}$            )
day of  June 2026                                                    )
before me:                                                           )

_____
**Catherine Pelker**

**A person authorised under the laws of the United States of America to take oaths and declarations**

District of Columbia
Signed and sworn to (or affirmed) before me
on _____ by _____
          Date          Name(s) of Individual(s) making Statement
_____
Signature of Notarial Officer
_____
Title of Office
My commission expires: ____4/14/31____

STEPHANIE WALLACE
Notary Public, District of Columbia
My Commission Expires April 14, 2031

7

CP02-001



This is the exhibit marked with number "**CP02-001**" referred to in the annexed affidavit of **Catherine Pelker** affirmed at Washington, D.C this $\mathcal{24}^{th}$ day of June 2026 before me

A person authorised under the laws of the United States of America to take oaths and declarations

District of Columbia

Signed and sworn to (or affirmed) before me

on _____ by _____
    Date        Name(s) of Individual(s) making Statement

_____
Signature of Notarial Officer

_____
Title of Office

My commission expires: _____

STEPHANIE WALLACE
Notary Public, District of Columbia
My Commission Expires April 14,2031

Case 1:25-cv-02085-CJN    Document 298    Filed 12/12/25    Page 1 of 7

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| United States of America, | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | No. 1:25-cv-02085-CJN |
| | ) | |
| v. | ) | |
| | ) | |
| All virtual currency held in the BTC-e | ) | |
| operating wallets as of July 25, 2017, and | ) | |
| other assets further described herein | ) | |
| | ) | |
| Defendants *in rem*. | ) | |

**STATUS REPORT**

Plaintiff United States of America ("the Government") respectfully submits this Status Report in accordance with the Court's Minute Order of November 26, 2025.

**A. Background**

The Government filed this case on June 30, 2025 against various assets formerly held by or traceable to the unlicensed cryptocurrency exchange BTC-e, which was widely used for money laundering and other illicit activities. In accordance with Supplemental Rule G(4)(b), the Government provided direct notice of this case to roughly 110 individuals in July and August 2025.[1] Most of these individuals were alleged BTC-e account-holders who had contacted the Government in the years since BTC-e ceased operations in 2017. Consistent with Supplemental Rule G(4)(b)(ii), the direct notice stated that claimants needed to file claims within 35 days of the direct notice and needed to file Answers no later than 21 days thereafter. The Government also provided publication notice of this case, by posting the case to www.forfeiture.gov, beginning on

---

[1] The reason why some direct notices were delayed until August 2025 is that some of the relevant individuals were foreign individuals whom the Government could not contact without first sending Mutual Legal Assistance requests to the host countries.

1

July 4, 2025 and running for 30 days thereafter. Consistent with Rule G(5)(a)(ii)(B), the publication notice stated that claims were due 60 days from the date of first publication (*i.e.* September 2, 2025) and Answers were due 21 days thereafter. The direct notices and publication notice also explained the remission process and how aggrieved individuals could file remission petitions.

### B.  The Government's Position on Late Claims

To establish statutory standing in a civil forfeiture action, a putative claimant must demonstrate that he has complied with the statutory requirements designated by Congress for contesting a civil forfeiture action. *See United States v. 8 Gilcrease Lane*, 641 F. Supp. 2d 1, 5 (D.D.C. 2009). Under 18 U.S.C. § 983(a)(4) and Supplemental Rule G(5), a would-be claimant must, among other things, file a claim within the time periods prescribed by law—which is generally 35 days after receipt of direct notice, or 60 days after the first publication for parties who did not receive direct notice. *See* 18 U.S.C. § 983(a)(4); Supp. R. G(5)(a)(i), G(5)(b); *see also United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 664 F. Supp. 2d 97, 101 (D.D.C. 2009). "Because the procedures prescribed by the Supplemental Rules play an important role in structuring forfeiture suits and ensuring that they proceed efficiently, a court is authorized to strike the claim and/or answer of any claimant who fails to follow the Rules' procedural dictates." *Id.* "Courts generally expect claimants to adhere strictly to those requirements." *Id.*; *see also United States v. All Assets Held in Acct. No. XXXXXXXX*, No. CV 13-1832, 2014 WL 12810522, at *6 (D.D.C. July 3, 2014) ("Courts require 'strict compliance' with these statutory standing requirements."); *United States v. Fifty-Three Virtual Currency Accts.*, No. CV 20-2227, 2025 WL 2732705, at *3 (D.D.C. Sept. 25, 2025) (same).

In response to the Court's questions, the Government responds as follows:

2

### 1.    Government's Position on Late Claims Filed Without Leave

Under Rule G, the deadline for parties who received notice by publication was September 2, 2025, 60 days after the Government first published notice of this case on www.forfeiture.gov. *See* Supp. Rule G(5)(a)(ii)(B). Moreover, given the press reporting about this case and its prominence among the cryptocurrency community, the Government doubts whether any parties who seek to file late claims at this juncture could *reasonably* claim to have only recently learned of this case. Nevertheless, by the Government's estimation, at least 25-30 claims have been filed after the presumptive Rule G deadline for submission of claims. Although the Government agreed not to oppose the requests of certain claimants to file late claims, others have not sought any such relief and have not set forth any justification for failure to timely file claims. The Government is continuing to examine these late-filed claims to determine whether it will oppose their filing as untimely. The Government notes that late-filed claims not only increase burdens on the Court and Government but also may affect the extent of relief for other claimants who timely filed claims, as well as persons who chose to forego litigation and seek relief through post-forfeiture remission. Indeed, one group of claimants recently and properly told the Court that "given the large number of Claimants already entered in the case and the need for orderly progress, further expansion of the claimant pool would significantly complicate and delay both case management and timely resolution for all existing parties. Undersigned Claimants further submit that they believe continuing to expand the number of claimants in this action is, or may ultimately be, adverse to their interests in this case . . ." Dkt. 289 at 1.

The Government anticipates that it will be able to complete its review of the untimely claims within the next 60 days and determine whether it will seek to strike the claims on timeliness grounds. The Government notes that it may challenge the standing of these and other claimants,

including those who filed claims before September 2, 2025, on additional grounds or seek further information through Special Interrogatories authorized under Supplemental Rule G(6). The Government respectfully requests the opportunity to provide a further status report within the next 60 days to advise the Court of its review of the claims submitted.

**2.    Government's Position on Future Requests for Leave to File Late Claims**

The Government intends to oppose as untimely any new claims that may be filed after the date of this Status Report. It has been 161 days since the Government began publishing notice of this forfeiture action and 101 days since the period for filing timely claims based on that notice closed. Untimely claims will prejudice and protract these proceedings because an ever-expanding universe of claimants will delay the Government's evaluation of claims, delay and complicate potential frameworks for settlement, and risk prejudice to claimants who did file on time or people who seek recovery through post-forfeiture remission.

**3.    The Court Has Good Cause to Set a Final Cut-Off Date of December 12, 2025 for Receipt of Claims**

The Court's November 26 Minute Order asked "whether it may be appropriate, consistent with Supplemental Rule G(5)(a)(ii) and 'for good cause,' to set a final cut-off date for claims at some point to ensure that this matter can proceed in a timely and organized manner." As stated above, the Government believes that even untimely claims filed before today *may* be strikable on timeliness grounds, but any claims filed *after* today should certainly be deemed *per se* untimely and disallowed. In other words, the Court has good cause to set a *per se* and "final" claims cut-off of today. The Government provided extensive notice of this case, both direct notice and publication notice. There must be finality as to the universe of claimants, particularly since an ever-expanding universe of claimants makes it impossible for the Government to evaluate the claims or suggest a framework for orderly resolution of this case through settlement or litigation. An ever-expanding

universe of claimants is also inconsistent with Rule G, which sets claim deadlines precisely so the universe of litigants becomes fixed at an early stage of the case.

## C. Next Steps

The Government proposes that, except for litigation involving Rule G(6) Special Interrogatories, the Court hold further litigation in abeyance for 60 days so the Government can evaluate the claims and determine: (a) whether to seek to strike insufficient or untimely claims; and/or (b) propose settlement of some or all claims. In particular, the Government is currently evaluating the feasibility and desirability of a proposed settlement under which some or all of the seized cryptocurrency might be distributed *pro rata* to claimants and remission petitioners who can show that they were *bona fide* non-criminal accountholders of BTC-e at the time of its dissolution and who have not otherwise received compensation. Evaluating this settlement structure requires that the Government assess the value of claims and remission petitions relative to the size of the recoverable cryptocurrency in this case. This is a time-intensive process, particularly when claims have continued to roll in up to the present day.

The Government proposes that it report back after 60 days regarding its evaluation of claims, progress toward possible resolution/settlement of claims, and/or whether a case schedule should be set for adversarial litigation against some or all claimants.

Respectfully submitted,

MARGARET A. MOESER
CHIEF
MONEY LAUNDERING, NARCOTICS
AND FORFEITURE SECTION

*/s/ Joshua L. Sohn*
JOSHUA L. SOHN
Trial Attorney

5

Money Laundering, Narcotics
And Forfeiture Section
Criminal Division
United States Department of Justice
1400 New York Avenue NW
Washington, DC 20005
Telephone: (202) 353-2223
joshua.sohn@usdoj.gov

*/s/ Catherine Alden Pelker*
CATHERINE ALDEN PELKER
Trial Attorney
Computer Crime and Intellectual Property Section
Criminal Division
United States Department of Justice
1301 New York Avenue NW
Washington, DC 20530
Telephone: (202) 514-1062
catherine.pelker@usdoj.gov

6

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2025, I caused the foregoing document to be served, via CM/ECF, to all counsel of record in this action. I also emailed a copy of this document to all *pro se* parties whose email addresses are readily available.

By:    ___*/s/ Joshua L. Sohn*____
Joshua L. Sohn

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, | ) CIVIL ACTION |
| | ) |
| Plaintiff, | ) No. 1:25-cv-02085-CJN |
| | ) |
| v. | ) |
| | ) |
| All virtual currency held in the BTC-e | ) |
| operating wallets as of July 25, 2017, and | ) |
| other assets further described herein | ) |
| | ) |
| Defendants *in rem*. | ) |

### STATUS REPORT

Plaintiff United States of America ("the Government") respectfully submits this Status Report pursuant to the Court's Minute Order of December 22, 2025.

Roughly 100 alleged BTC-e accountholders have filed claims in this action or petitions for remission or mitigation of forfeiture in accordance with the Attorney General's authority to grant remission or mitigation of forfeiture. *See* 28 C.F.R. Part 9. Most of these alleged accountholders filed claims, though a sizable minority filed remission petitions only.

Besides claimants asserting an interest as BTC-e accountholders, the only other claimant in this case is the bankruptcy trustee of the Japanese cryptocurrency exchange Mt. Gox, who bases his claim on allegations that some cryptocurrency stolen from Mt. Gox transited through BTC-e. For convenience, the Government refers to the Mt. Gox bankruptcy trustee as "Mt. Gox" in this status report.

### A. The Government Is Still Evaluating the Claims and Account Balances of the Accountholder Claimants

In its prior Status Report, the Government advised that it was considering the feasibility of a settlement proposal under which some or all of the seized cryptocurrency might be distributed *pro*

1

*rata* to *bona fide,* non-criminal accountholder claimants and remission petitioners who had not otherwise received compensation. *See* Dkt. 298 at 5. Since its prior Status Report, the Government has sought to ascertain the account holdings of claimants and remission petitioners at the time of BTC-e's dissolution, as well as the potential for *pro rata* distributions, taking into account the proportion of BTC-e's cryptocurrency in the Government's possession, the quantity and denomination of this cryptocurrency, and the size of the claims/petitions lodged by claimants and remission petitioners. Unfortunately, due to the complexity of validating the claims and remission petitions, the Government is not yet able to propose a framework for resolution and distributions.

Although not the only challenge, the Government notes that the volume and nature of transactions within accounts has been a particular impediment to evaluation of accountholder claims and petitions. Specifically, the claimants in this case did not merely deposit and withdraw cryptocurrency at BTC-e; some of them also conducted staggering amounts of cross-currency trading on the BTC-e platform. For example, one of the claimants in this case conducted more than 1,700 cross-currency trades. This cross-currency trading (the volume of which the Government did not appreciate until recently) makes it much more difficult to calculate the claimants' and remission petitioners' account balances at the time of BTC-e's dissolution and the viability of potential frameworks for resolution of claims and petitions. The Government is diligently trying to perform this calculation and suggests that it provide another status report within 60 days regarding its progress.

**B. The Government Plans to Meet with Mt. Gox Counsel on February 27**

On February 27, the Government plans to meet with Mt. Gox counsel. At this meeting, Mt. Gox counsel will discuss the basis for its claim. Based on the results of this meeting, the

2

Government will assess whether to try to fold Mt. Gox into a proposed resolution, or move to strike Mt. Gox for lack of standing, or take other action.

**C.  The Government Asks That Other Litigation Events Be Stayed**

Finally, the Government asks that the Court stay other litigation events (discovery, etc.) until 30 days following the Government's next status report regarding its progress on determining accountholder account balances, the Feb. 27 Mt. Gox meeting, and a possible framework for resolution of some or all claims and petitions. The Government should not be burdened with intrusive discovery as it is spending its resources on trying to ascertain whether some or all of this case can be resolved without costly litigation.

Respectfully submitted,

MARGARET A. MOESER
CHIEF
MONEY LAUNDERING, NARCOTICS
AND FORFEITURE SECTION

*/s/ Joshua L. Sohn*
JOSHUA L. SOHN
Trial Attorney
Money Laundering, Narcotics
And Forfeiture Section
Criminal Division
United States Department of Justice
1400 New York Avenue NW
Washington, DC 20005
Telephone: (202) 353-2223
joshua.sohn@usdoj.gov

*/s/ Catherine Alden Pelker*
CATHERINE ALDEN PELKER
Trial Attorney
Computer Crime and Intellectual Property Section
Criminal Division
United States Department of Justice
1301 New York Avenue NW

Washington, DC 20530
Telephone: (202) 514-1062
catherine.pelker@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2026, I caused the foregoing document to be served, via CM/ECF, to all counsel of record in this action. I also emailed a copy of this document to all *pro se* parties whose email addresses are readily available.

By:    _____*/s/ Joshua L. Sohn*_____
Joshua L. Sohn

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| United States of America, | )    CIVIL ACTION |
| | ) |
| Plaintiff, | )    No. 1:25-cv-02085-CJN |
| | ) |
| v. | ) |
| | ) |
| All virtual currency held in the BTC-e | ) |
| operating wallets as of July 25, 2017, and | ) |
| other assets further described herein | ) |
| | ) |
| Defendants *in rem*. | ) |

**STATUS REPORT**

Plaintiff United States of America ("the Government") respectfully submits this Status Report pursuant to the Court's Minute Order of February 20, 2026.

On February 27, 2026, the Government met with counsel for the Mt. Gox bankruptcy trustee ("Mt. Gox"). In this meeting, the Government stated its position that the most important open issue regarding how to treat the Mt. Gox claim was whether there was tracing or other evidence that the stolen Mt. Gox cryptocurrency sent *to* BTC-e circa 2011-14 *remained* in BTC-e when the Government seized BTC-e's assets in 2017. Since the February 27 meeting, Mt. Gox counsel and Government counsel have traded information and evidence in an attempt to come to ground on this issue, and the parties agreed to hold another meeting where Mt. Gox counsel would lay out their tracing case. The parties have agreed to hold this meeting in late April or early May 2026 and are working to nail down a mutually-agreeable day in that timeframe.

Given the very large size of the Mt. Gox claim, the Government's decision on how to treat the Mt. Gox claim could greatly impact the contours and prospects for a global settlement. Indeed, several of the accountholder-claimants have told the Government that they fear an equitable

1

settlement would be impossible if Mt. Gox's claim remained in this case, because the Mt. Gox claim would "swallow up" or "greatly dilute" the accountholder claims. At this time, the Government does not take a firm position on whether the accountholder-claimants are correct, but the Government does agree that the fate of the Mt. Gox claim is very important for either settlement or merits litigation.

Separately, the FBI is continuing to try to ascertain the accountholder-claimants' account balances, including accounting for the high volume of cross-currency trading on the BTC-e platform. The FBI has made progress interpreting and calculating the cryptocurrency trading history for users. The FBI is continuing to work on calculating approximate users' balances that considers the cryptocurrency trading of users. The FBI requests additional time to work through the accounting for cryptocurrency trading.

For the foregoing reasons, the Government requests that the stay remain in place for an additional 60 days, and that the Government file another status report at that juncture.

The Court's February 20 Minute Order also asked for more specificity about "which claims [the Government] might move to strike on timeliness grounds." As a general matter, the Government believes that any claims filed after November 2025 should be struck as untimely, given the Government's publication notice and the high publicity of this case among the cryptocurrency community. The Government has, in fact, opposed several claims filed after that date. *See, e.g.,* Dkts. 317, 321. However, there could be exceptions to a November 2025 cut-off date, in both directions. For example, if a putative claimant had actual knowledge of this case well before November 2025, a claim filed even before the end of November 2025 could be struck as untimely. Conversely, a post-November 2025 claim might be excused if the claimant shows unusual and compelling circumstances, such as protracted illness that prevented an earlier claim

from being filed. One late-filing claimant raised that precise excuse, and the Government took no position of whether his claim should be allowed. *See* Dkt. 329.

Thus, the Government cannot provide a universal bright-line date after which it will seek to strike claims. The decision may depend on the specific facts of the claims.

Respectfully submitted,

MARGARET A. MOESER
CHIEF
MONEY LAUNDERING, NARCOTICS
AND FORFEITURE SECTION

*/s/ Joshua L. Sohn*
JOSHUA L. SOHN
Trial Attorney
Money Laundering, Narcotics
And Forfeiture Section
Criminal Division
United States Department of Justice
1400 New York Avenue NW
Washington, DC 20005
Telephone: (202) 353-2223
joshua.sohn@usdoj.gov

*/s/ Catherine Alden Pelker*
CATHERINE ALDEN PELKER
Trial Attorney
Computer Crime and Intellectual Property Section
Criminal Division
United States Department of Justice
1301 New York Avenue NW
Washington, DC 20530
Telephone: (202) 514-1062
catherine.pelker@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2026, I caused the foregoing document to be served, via CM/ECF, to all counsel of record in this action. I also emailed a copy of this document to all *pro se* parties whose email addresses are readily available.

By:      */s/ Joshua L. Sohn*

            Joshua L. Sohn

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| United States of America, | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | No. 1:25-cv-02085-CJN |
| | ) | |
| v. | ) | |
| | ) | |
| All virtual currency held in the BTC-e | ) | |
| operating wallets as of July 25, 2017, and | ) | |
| other assets further described herein | ) | |
| | ) | |
| Defendants *in rem*. | ) | |

**STATUS REPORT**

Plaintiff United States of America ("the Government") respectfully submits this Status Report pursuant to the Court's Minute Order of April 29, 2026.

On May 13, 2026, the Government had its second meeting with counsel for Mt. Gox. At this meeting, Mt. Gox laid out its factual and legal theory for why the Defendant Assets are, in their view, traceable to the cryptocurrency stolen from Mt. Gox and routed through BTC-e. The Government is reviewing information provided by Mt. Gox and plans to have a further meeting, including a potential counter-presentation if necessary, next month. The Government also reminded Mt. Gox that there are dozens of BTC-e accountholders who have filed claims that are fundamentally adverse to Mt. Gox because they lay claim to the same finite pool of Defendant Assets. Accordingly, the Government encouraged Mt. Gox to reach out to counsel for the accountholder claimants to determine whether it is possible for them to present a joint proposal for the Government to consider with an eye toward potential global resolution of this case. The Government does not know whether Mt. Gox has yet reached out to the accountholder claimants,

1

but the Government believes (based on the tenor of the May 13 Mt. Gox meeting) that Mt. Gox has done so or will soon do so.[1]

Separately, the FBI has made substantial progress in its assessment of the BTC-e account balances for the accountholder claimants and remission petitioners whose account records the Government was able to find. The Government has been unable to locate BTC-e accounts for some of the accountholder claimants and petitioners based on the information provided in the claims and petitions, and the Government plans to reach out to those individuals and/or their counsel to solicit more information (on a voluntary basis) about their alleged accounts.

For the foregoing reasons, the Government respectfully requests that the stay be extended for an additional 45 days, with another Government Status Report due at that time.

Respectfully submitted,

MARGARET A. MOESER
CHIEF
MONEY LAUNDERING, NARCOTICS
AND FORFEITURE SECTION

/s/ Joshua L. Sohn
JOSHUA L. SOHN
ALLISON ICKOVIC
Trial Attorneys
Money Laundering, Narcotics
And Forfeiture Section
Criminal Division
United States Department of Justice
1400 New York Avenue NW
Washington, DC 20005
Telephone: (202) 353-2223
joshua.sohn@usdoj.gov

/s/ Catherine Alden Pelker
CATHERINE ALDEN PELKER

---

[1] While there are a great many accountholder claimants, most of them are represented by a small number of attorneys and law firms.

2

Trial Attorney
Computer Crime and Intellectual Property Section
Criminal Division
United States Department of Justice
1301 New York Avenue NW
Washington, DC 20530
Telephone: (202) 514-1062
catherine.pelker@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2026, I caused the foregoing document to be served, via CM/ECF, to all counsel of record in this action. I also emailed a copy of this document to all *pro se* parties whose email addresses are readily available.

By:    ___*/s/ Joshua L. Sohn*___
Joshua L. Sohn

CP02-002



This is the exhibit marked with number "CP02-002" referred to in the annexed affidavit of **Catherine Pelker** affirmed at Washington, D.C this ___ day of June 2026 before me

A person authorised under the laws of the United States of America to take oaths and declarations

District of Columbia
Signed and sworn to (or affirmed) before me
on ___ by ___
Date    Name(s) of Individual(s) making Statement

Signature of Notarial Officer

Title of Office
My commission expires: ___

STEPHANIE WALLACE
Notary Public, District of Columbia
My Commission Expires April 14, 2031

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>                          Plaintiff,<br><br>vs.<br><br><br>ALL VIRTUAL CURRENCY HELD IN THE BTC-E OPERATING WALLETS AS OF JULY 25, 2017, AND OTHER ASSETS FURTHER DESCRIBED HEREIN<br><br>                          Defendants *in rem.* | Civil Case No. 1:25-cv-02085-CJN<br>Hon. Carl J. Nichols<br><br><br><br>**NOBUAKI KOBAYASHI, AS FOREIGN REPRESENTATIVE AND TRUSTEE TO THE MTGOX ESTATE'S VERIFIED CLAIM AND STATEMENT OF INTEREST IN DEFENDANT ASSETS** |

1

Pursuant to 18 U.S.C. § 983(a)(4)(A) and Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"), Claimant Nobuaki Kobayashi, in his capacities as the Bankruptcy Trustee and Foreign Representative and Trustee of the Second Civil Rehabilitation Proceeding of MtGox Co., Ltd., a/k/a MtGox KK ("MtGox" and the "MtGox Trustee")[1] submits this Verified Claim asserting an ownership interest in the subject seized property in the above-captioned matter.

On June 30, 2025, the United States filed a Verified Complaint for Forfeiture *In Rem* (ECF No. 1, the "Complaint") seeking forfeiture of the following property (collectively, the "Defendant Assets"):

A.   All virtual currency held in the BTC-e operating wallets as of July 25, 2017, including but not limited to:

   (i)   Approximately 925.93922019 bitcoin seized between August 2, 2017, and August 17, 2017;

   (ii)   Approximately 4036.91817168321 ether seized on August 5, 2017;

   (iii)   Approximately 2249.25 litecoin seized between August 7, 2017 and August 11, 2017;

   (iv)   Approximately 284553.52143074 namecoin seized on August 10, 2017;

   (v)   Approximately 1946.609 novacoin seized on August 7, 2017;

---

[1] The MtGox bankruptcy proceeding pending before the Twentieth Civil Division of the Tokyo District Court, Japan, has been recognized as a "foreign main proceeding" in the United States bankruptcy case of *In re MtGox Co., Ltd. (a/k/a MtGox KK)* (No. 14-31229-sgj-15) (N.D. Tex. Bankr.) (the "MtGox Estate"). *See generally* ECF Nos. 1, 2, and 3 (petition for Chapter 15 recognition of foreign proceedings); No. 127 (MtGox Trustee's Amended Verified Petition for Recognition); No. 151 (Order recognizing foreign main proceeding); No. 194 (Amended Recognition Order).

(vi)    Approximately 279.05 peercoin seized on August 11, 2017;

(vii)    Approximately 33.03682558 dash seized between August 7, 2017 and August 11, 2017;

(viii)    Approximately    929.5    BTC    transferred    to 1FFs5hv6JBScJq63aFZvBaNsP6FwnhVgre on or about July 31, 2017; and

(ix)    Approximately    485,705.4599    ETH    held    in 0x8eb3fa7907ad2Ef4c7E3BA4B1d2F2aAc6f4B5ae6 as of July 30, 2017.

B.    Approximately USD $89,683,590.51, AUD $ 5,471,132.02, RUB 9,339,457.71, and GBP 35,459.32 in funds consolidated and previously held in the name of or for the benefit of Canton Business Corporation at FXOpen and/or XP Solutions Limited, account number X60FXPNXXF9776910001, and related trading accounts, including any interest earned thereon.

C.    Approximately USD $72,574.48 and RUB 453,361.66 in funds consolidated and previously held in the name of Alexander Vinnik at FXOpen and/or XP Solutions Limited, account number XX20FXPNXXF3396510002, and related trading accounts, including any interest earned thereon.

D.    Approximately USD $5,491.509.67 in funds consolidated and previously held in the name of or for the benefit of Canton Business Corporation and/or Stanislav Golovanov    at    FXOpen    AU    Pty    Ltd.,    account    number XX46FXPNXXG3750310001, and related trading accounts, including any interest earned thereon.

E.      All funds on deposit in account numbers (i) CZ6903000000000273635458, (ii) CZ6703000000000273635300, and (iii) CZ7803000000000273636266, held in the name of NANO ABC LP at Československá obchodní banka.

F.      All funds on deposit in account number CZ0080000000000001939292223 held in the name of NANO ABC LP at Česká spořitelna banka.

Complaint at ¶ 11.

The United States seeks forfeiture of the Defendant Assets on the grounds that they were involved in transactions (1) involving the operation of an unlicensed money transmitting business in violation of 18 U.S.C. § 1960; and (2) that are part of a money laundering conspiracy in violation of 18 U.S.C. § 1956(h), both of which render the Defendant Assets forfeitable under 18 U.S.C. § 981(a)(1)(A). Complaint at ¶1. Specifically, the United States alleges that the Defendant Assets were "involved in the operation of BTC-e, an unlicensed cryptocurrency exchange that laundered money for criminals from 2011 until it was shut down by U.S. law enforcement in 2017." *Id.* at ¶ 12. The United States further alleges that "BTC-e [and its associated accounts] received and transferred cryptocurrency" from specified unlawful activities, including "approximately 300,000 of the bitcoin stolen from Mt. Gox." *Id.* at ¶¶ 71, 94-98. "BTC-e was used to conceal the stolen funds and obscure their ultimate destination, allowing the perpetrator(s) to profit from their crimes." *Id.* at ¶ 98.

Thus, the Complaint alleges that the crimes giving rise to forfeiture were, among other things, the theft of the Defendant Assets from Mt. Gox, and Alexander Vinnik's ("Vinnik") laundering of such assets through BTC-e. *Id.* at ¶ 97-103. These same underlying crimes gave rise to a criminal indictment against Vinnik and BTC-e, alleging, similarly, that after "the thefts, some approximately 530,000 of the bitcoin (worth hundreds of millions of dollars) stolen from Mt Gox

4

was deposited into wallets at three different digital currency exchanges" including BTC-e, and that "of this 530,000 bitcoin, 300,000 of it was sent directly to three separate BTC-e accounts" controlled by Vinnik.[2] The Complaint further explains that Vinnik pled guilty to a money laundering conspiracy in violation of 18 U.S.C. § 1956(h) and admitted that "BTC-e received criminal proceeds of numerous computer intrusions and hacking incidents" and that many of the Defendant Assets were forfeitable as a result. Complaint at ¶¶ 101-103.

Pursuant to 18 U.S.C. § 983(a)(4)(A) and Rule G(5) and the Recognition Order (explained below), the MtGox Trustee hereby submits this Verified Claim asserting an ownership interest and constructive trust in each of the Defendant Assets (each of Defendant Properties A – F, inclusive). The Defendant Assets are traceable to specified unlawful activities, and are traceable to the 2011-2014 hacks and thefts of bitcoin from MtGox, which led to MtGox's collapse and insolvency. The MtGox Trustee asserts an interest in the Defendant Assets as property stolen from MtGox, and as to which the MtGox Estate has an interest. If the Defendant Assets are returned to the MtGox Trustee, the MtGox Trustee would facilitate an efficient, orderly distribution of them to MtGox's creditors consistent with the Trustee's obligations under the United States Bankruptcy Code.

*****

**Background Regarding MtGox and the Trustee's Chapter 15 Powers**

On March 9, 2014, MtGox Co., Ltd. and the MtGox Trustee petitioned the United States Bankruptcy Court for the Northern District of Texas for Chapter 15 recognition of a foreign proceeding,[3] namely a civil rehabilitation proceeding in Tokyo pursuant to Japan's Civil

---

[2] *See United States v. BTC-E A/K/A Canton Business Corporation, et al.,* (16-cr-00227-SI) (N.D. Cal.) ECF No. 1 at ¶¶ 52 – 56.

[3] Generally, Chapter 15 of the United States Bankruptcy Code provides "effective mechanisms for dealing with cases of cross-border insolvency with the objectives of—(1) cooperation between—(A) courts of the United States, United States trustees, trustees, examiners, debtors, and debtors in possession; and (B) the

Rehabilitation Act (the "Tokyo Court"), and subsequently filed an amended petition on May 23, 2014. *See In re MtGox Co., Ltd.*, ECF No. 126 (MtGox Trustee's Amended Verified Petition For Recognition and Chapter 15 Relief). On April 24, 2014, the Tokyo Court appointed the MtGox Trustee as bankruptcy trustee for the MtGox Estate. *Id.* at ¶ 2. On June 19, 2014, the U.S. Bankruptcy Court for the Northern District of Texas formally recognized the Tokyo Court proceedings as a "foreign main proceeding," and recognized the MtGox Trustee as the "foreign representative" of MtGox pursuant to Chapter 15 of the United States Bankruptcy Code. *In re MtGox Co., Ltd.*, ECF No. 151 (the "Recognition Order"). Since April 2014, Japanese bankruptcy proceedings for MtGox had commenced in Tokyo, and Nobuaki Kobayashi was appointed as the bankruptcy trustee. In June 2018, the Japanese case was converted to civil rehabilitation proceedings, and Mr. Kobayashi continued to serve as the court-appointed rehabilitation trustee. In connection with this development, the Chapter 15 Recognition Order was amended on December 11, 2018 (the "**Amended Recognition Order**," attached as **Exhibit A**).[4]

Among other things, the Amended Recognition Order entrusts the MtGox Trustee "with the administration and realization of all of the Debtor's assets within the territorial jurisdiction of the United States" and authorizes the MtGox Trustee to "take all actions necessary to effectuate the relief granted pursuant to" that order. Recognition Order at ¶¶ 7-9. In other words, the MtGox Trustee is empowered to seek a recovery of assets belonging to the MtGox Estate in legal proceedings in the United States. As alleged in the Complaint (*see, e.g.*, ¶¶ 94-103), Vinnik and other co-conspirators stole and illegally removed assets from Mt. Gox's possession, custody or control, and then laundered those assets by sending them to BTC-e. Some of the Defendant Assets

---

courts and other competent authorities of foreign countries involved in cross-border insolvency cases." *See* 11 U.S.C. § 1501(a).

[4] *See* ECF No. 194, *In re MtGox Co., Ltd. (a/k/a MtGox KK)* (No. 14-31229-sgj-15) (N.D. Tex. Bankr.).

are property stolen from MtGox, are traceable to property stolen from MtGox, or are proceeds of the same or related underlying unlawful activity (theft and money laundering). On this basis, the MtGox Trustee files this verified claim to assert an ownership interest, prior possessory interest and constructive trust over each of the Defendant Assets. *See Supp. Fed. R. Civ. P.* G(5)(a). The MtGox Trustee stands ready to confer with counsel for the United States to facilitate[5] an orderly collection and re-distribution process, and requests formal recognition of the MtGox Trustee's claim pursuant to 28 U.S.C. § 2465.

Pursuant to Rule E(8) of the Supplemental Rules, the MtGox Trustee expressly limits its appearance to asserting and defending its claim. The MtGox Trustee reserves all rights to challenge the *in rem* jurisdiction of this Court and the propriety of venue in this action.

DATED: August 20, 2025

**BROWN RUDNICK LLP**

By: */s/ Daniel L. Sachs*

David J. Molton (*pro hac vice pending*)
Gerard T. Cicero (*pro hac vice pending*)
Daniel F. Kerns (*pro hac vice pending*)
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Email: dmolton@brownrudnick.com
Email: gcicero@brownrudnick.com
Email: dkerns@brownrudnick.com

*-and-*

Daniel L. Sachs (DC Bar 1045490)
1900 N St. NW Suite 400

---

[5] *See, e.g., In re MtGox Co., Ltd. (a/k/a MtGox KK)* (No. 14-31229-sgj-15) (N.D. Tex. Bankr.), ECF No. 174 (MtGox Trustee requesting approval of settlement agreement with the United States and repatriation of forfeited assets to Japan); ECF No. 177 (Bankruptcy court granting motion).

Washington, DC 20036
Tel: 202-536-1796
Email: dsachs@brownrudnick.com

*Counsel for Nobuaki Kobayashi, In His
Capacities as the Bankruptcy Trustee and
Foreign Representative and Trustee of the
Second Civil Rehabilitation Proceeding and
Foreign Representative of MtGox Co., Ltd.,
a/k/a MtGox KK*

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing Verified Claim and Statement of Interest of Claimant is true and correct to the best of my knowledge and belief.

Dated: August 20 , 2025

By: _Nobuaki Kobayashi_

Nobuaki Kobayashi, In His Capacities as the Bankruptcy Trustee and Foreign Representative and Trustee of the Second Civil Rehabilitation Proceeding and Foreign Representative of MtGox Co., Ltd., a/k/a MtGox KK