**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| United States of America, | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | No. 1:25-cv-02085-CJN |
| | ) | |
| v. | ) | |
| | ) | |
| All virtual currency held in the BTC-e operating wallets as of July 25, 2017, and other assets further described herein | ) ) ) | |
| | ) | |
| Defendants *in rem*. | ) | |

**PLAINTIFF UNITED STATES OF AMERICA'S REPLY IN SUPPORT OF MOTION TO STRIKE CLAIM OF MICHAEL WILLIAM CHARLES HAWORTH**

Haworth's Opposition Brief, served a remarkable *35 minutes* after the Government served its Motion to Strike,[1] does not rebut the Government's arguments. Haworth lacks standing and his claim should be struck.

## I. The $1.46 In Haworth's BTC-e Account Does Not Grant Standing

Haworth argues that he has standing because his BTC-e customer account contained $1.46 USD at the time of seizure. This standing argument fails for two reasons. First, Haworth did not claim against any vestigial U.S. dollars in his account; his claim was expressly limited to "the Bitcoin seized from BTC-E operating wallets to the extent of my customer holdings." Dkt. 316 at 1. Second, the Defendant Assets do not include any vestigial U.S. dollars from BTC-e's

[1] As discussed in Section IV, this timing creates a strong inference that Haworth fabricated his Opposition Brief through AI. The Government does not believe it likely that Haworth himself digested the Government's motion and wrote a 4-page single-spaced Opposition Brief, complete with U.S. caselaw citations, in 35 minutes (Haworth is a *pro se* claimant in the UK). The Government ran Haworth's brief through a publicly-available AI checker, which reported that it was "highly confident" the text was AI-generated. Of course, as explained further, the essence of the Government's concern is that Haworth did not verify the accuracy and applicability of the legal citations in the brief that appears to be AI-generated.

operating accounts, such as the $1.46 credited to Haworth. Rather, Defendant Asset (A) is described as "All *virtual currency* held in the BTC-e operating wallets as of July 25, 2017," followed by descriptors of various bitcoin, ether, litecoin, and other cryptocurrency holdings. Complaint ¶ 11 (emphasis added). Conspicuously absent from this list of descriptors is any fiat currency holdings, and "virtual currency" is a common synonym for cryptocurrency, not fiat currency. *See, e.g.,* J. Scott Colesanti*, Caging the Bored Ape: How the Ftc's Expanded Anti-Monopoly Authority Can Tame "Nfts" for Web 3.0*, 15 WM. & MARY BUS. L. REV. 117, 132 n. 77 (2023) (calling cryptocurrency and virtual currency "synonyms."). If there were any doubt about whether Defendant Asset (A) includes fiat currency like U.S. dollars, it is dispelled by the *other* Defendant Asset classes (B-F), which do expressly list specific U.S. dollar deposits in identified foreign bank accounts. When one reads Paragraph 11 as a whole, there is no doubt that Defendant Asset (A) (the assets in BTC-e's operating wallets) is limited to cryptocurrency, not fiat currency. Thus, the vestigial $1.46 in the BTC-e operating wallets credited to Haworth's account does not grant Haworth standing, as this $1.46 is not part of the Defendant Assets pursued by the Government in this action. *See* Opp. at 1 (confirming that the $1.46 is located "in the seized operating wallets").

## II. The Government's Treatment of Mt. Gox Does Not Estop the Government from Challenging Haworth's Standing

Haworth next argues that "the Government is judicially and equitably estopped from challenging Claimant's standing as a pre-seizure victim of theft while simultaneously recognizing and litigating the multi-million dollar pre-seizure hack recovery claim of the Mt. Gox Trustee." Opp. at 1. This argument is unavailing. Assuming *arguendo* that Haworth and Mt. Gox are similarly situated, the Government has stated that it likely *will* move to strike Mt. Gox for lack of standing if no consensual resolution can be reached. *See, e.g.,* Dkt. 384 at 2. Thus, nothing in the

Government's treatment of Mr. Gox estops the Government from challenging Haworth's standing.

It is true that the Government has had several meetings with Mt. Gox counsel and has not had equivalent meetings with Haworth. But the Government's meetings with Mt. Gox counsel have been largely devoted to the factual issue of *what happened* to the bitcoin that was stolen from Mt. Gox and then laundered through BTC-e. By contrast, there is no factual dispute about Haworth's bitcoin: he admits that a hacker took it out of BTC-e in 2014. Thus, there would be no apparent purpose for a fact-based meeting between the Government and Haworth. In any event, there is no authority or logic for the proposition that the Government is estopped from striking Haworth's claim just because the Government has entertained meetings with Mt. Gox.

**III. Haworth's Invocation of Constructive Trust Does Not Establish Standing**

Finally, Haworth argues that "When Claimant deposited 6.99791434 BTC in December 2013, those coins were immediately commingled with the general exchange assets. When the exchange suffered a backend breach in 2014, the exchange's operators became legally liable to Claimant as a bailee for the unauthorized loss of his property . . . Under established D.C. civil forfeiture precedent, an equitable lien or constructive trust is a valid basis for standing when a claimant is a victim of theft seeking recovery against a commingled res." Opp. at 4. Notably, however, Haworth does not cite any authority for the proposition that "[u]nder established D.C. civil forfeiture precedent, an equitable lien or constructive trust is a valid basis for standing . . ." As recited in the Government's Opening Brief, the actual law is the opposite in this circuit—constructive trust is *not* a basis for standing in a civil forfeiture case. *See United States v. BCCI Holdings (Luxembourg), S.A.,* 46 F.3d 1185, 1190-91 (D.C. Cir. 1995); *see also United States v. All Assets Held at Bank Julius Baer & Co.*, 772 F. Supp. 2d 191, 199-201 (D.D.C. 2011).

It does not matter that BTC-e's customer deposits were "commingled" or that the bitcoin credited to Haworth's account was withdrawn by a hacker without Haworth's consent. The only way Haworth tries to turn these facts into a cognizable interest in the remaining BTC-e assets is through constructive trust, which he cannot do.

To be sure, Haworth's argument could be read for an even more radical proposition that, because the BTC-e customer deposits were commingled, no depositor's withdrawal of *any* funds from the common pool could *ever* extinguish that depositor's financial interest in the overall BTC-e asset pool, on the theory that portions of every depositor's assets remain in the commingled pool. *See* Opp. at 4 ("Because the seized 2017 operating wallets represent the surviving, commingled remnants of the exchange's customer deposits, Claimant retains a valid equitable property interest in that commingled pool."). On that radical theory, Haworth would have standing even if he *voluntarily* withdrew all of his bitcoin years before 2017, on the theory that he did not really withdraw "his" bitcoin but rather withdrew bitcoin from the common pool. Understandably, Haworth does not actually go that far—he does not say that he would have standing even after a *voluntary* withdrawal of all his bitcoin. But that just raises the question—what makes an *involuntary* withdrawal any different? Per Haworth, the answer seems to be that involuntary withdrawal makes "the exchange's operators [] legally liable to Claimant as a bailee for the unauthorized loss of his property," which can be satisfied through the remedy of constructive trust. Opp. at 4. So "commingling" is irrelevant—it all leads back to the BTC-e operators' supposed legal liability to Haworth, which can supposedly be satisfied through a constructive trust on their overall assets. Again, this is insufficient for standing.

Haworth also argues that "precision is not required where the Government's own delay and seizure of the platform's records created the evidentiary gap." Opp. at 4. But there is no want of

precision here. Indeed, there is no relevant dispute about how much bitcoin was deposited by Haworth or withdrawn by a hacker. It is undisputed that *all* the bitcoin credited to Haworth's account was withdrawn years before the Government seized BTC-e's assets, and that defeats Haworth's standing in this case. In any event, Haworth provides no basis for the proposition that the Government had a responsibility to seize BTC-e at any time before it did.

## IV. Haworth's Brief Raises Serious Questions About His Rule 11 Compliance

As previewed in footnote 1, it appears that Haworth's Opposition Brief was AI-generated. Haworth filed it just 35 minutes after he received the Government's motion, and the Government ran Haworth's brief through an AI checker that responded with a high degree of certainty that the brief was AI-generated. *See* Sohn Decl., attached hereto.

While it is not *per se* improper for a litigant to use AI, a litigant still has a Rule 11 duty to ensure and certify that his legal contentions are warranted. If Haworth simply passed in work product written by AI (as the 35-minute time window suggests), then Haworth could not have exercised the diligence needed to make this certification. *See Zavadovsky v. Republic of Austria*, No. CV 25-1008 (RC), 2026 WL 875148, at *25 (D.D.C. Mar. 31, 2026) ("At minimum, Rule 11(b)(2) requires litigants to confirm the existence and validity of cases and quotations cited in their court filings."); *Smith v. Athena Constr. Grp., Inc.*, No. 18-CV-02080 (APM), 2025 WL 4666327, at *1 (D.D.C. Oct. 3, 2025) (finding counsel's conduct "reckless insofar as counsel relied exclusively on an AI legal research tool to identify authorities and then incorporated that research into the Opposition Brief, without checking on the accuracy of the citations, propositions of law, or quotations the tool generated.").

The inapplicability of Haworth's legal citations further suggests that he did not perform a proper Rule 11 scrutiny of his brief before filing it. For example, Haworth cites "the Cohan doctrine" for the proposition that "precision is not required where the Government's own delay and seizure of the platform's records created the evidentiary gap." Opp. at 4. The *Cohan* doctrine is a tax law doctrine stating that "if a taxpayer claims a deductible expense and cannot fully substantiate it, the court may approximate the allowable amount. However, the taxpayer must provide reasonable evidence from which to estimate the deductible amount, and even then the court will bear heavily against the taxpayer." *Murphy v. Comm'r*, 100 T.C.M. (CCH) 496 fn. 6 (T.C. 2010). It has no applicability here, both because this is not a tax case and because there is no precision battle between the Government and Haworth. The Government is not contesting Haworth's position that a hacker absconded with all the bitcoin credited to Haworth's BTC-e account years before the Government seized BTC-e's assets.

In a similar vein, Haworth cites "United States v. BCCI Holdings precedent" (no further citation given) for his "precision" argument. Opp. at 4. That appears to be a reference to *United States v. BCCI Holdings (Luxembourg), S.A.,* 46 F.3d 1185 (D.C. Cir. 1995), but that case has nothing to do with precision. Rather, it stands for the proposition that constructive trust is not available in civil forfeiture cases (contrary to Haworth's position that constructive trust *is* available in civil forfeiture cases).

Haworth's apparent disregard for his Rule 11 duties has resulted in a brief containing citations that are inapposite, even bizarre. This underscores how Haworth's legal arguments lack merit.

WHRREFORE, the Government moves the Court to strike Haworth's claim.

DATED: September 2, 2026

REPECTFULLY SUBMITTED,

MARGARET A. MOESER
CHIEF
MONEY LAUNDERING, NARCOTICS AND
FORFEITURE SECTION

*/s/ Joshua L. Sohn*
JOSHUA L. SOHN
ALLISON ICKOVIC
Trial Attorneys
Money Laundering, Narcotics and
Forfeiture Section
Criminal Division
United States Department of Justice
1400 New York Avenue NW
Washington, DC 20005
Telephone: (202) 353-2223
joshua.sohn@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2026, I caused the foregoing document to be served, via CM/ECF, to all counsel of record in this action. I also emailed a copy of this document to claimant Michael William Charles Haworth at tronath@gmail.com.

By: ___*/s/ Joshua L. Sohn*____
Joshua L. Sohn