UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ALL VIRTUAL CURRENCY HELD IN THE BTC-E OPERATING WALLETS AS OF JULY 25, 2017, AND OTHER ASSETS FURTHER DESCRIBED HEREIN,

Defendant Property.

**Civil Action No. 1:25-cv-02085 (CJN)**

# VERIFIED CLAIM OF EVGENII GLAZUNOV TO DEFENDANT PROPERTY PURSUANT TO SUPPLEMENTAL RULE G(5)

Claimant Evgenii Glazunov (identified as Evgenij Glazunov in his August 27, 2025 administrative petition), appearing pro se, submits this Verified Claim under Supplemental Rule G(5)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, in response to the direct Notice of Civil Forfeiture Action dated October 30, 2026, and states as follows:

## I. CLAIMANT AND BTC-e ACCOUNT

1. My name is Evgenii Glazunov, as spelled in my Russian international passport. My August 27, 2025 Petition for Remission or Mitigation identifies me as Evgenij Glazunov. Both spellings identify me. I am a citizen of the Russian Federation and currently reside in Florianópolis, Santa Catarina, Brazil. I submit this Claim in my individual capacity.

2. I was a customer of the BTC-e virtual-currency exchange before its shutdown in July 2017. My account username was marazm, and my registered email address was evgenij.glazunov@gmail.com. I still have access to that email address.

3. A spreadsheet provided to me by counsel for the United States on November 3, 2026 identifies the BTC-e account associated with that username and email address as account ID 296303.

4. On October 30, 2026, I received a direct Notice of Civil Forfeiture Action concerning this case through the email account I used for BTC-e.

## II. SPECIFIC PROPERTY IN WHICH AN INTEREST IS ASSERTED

5. I assert a claimed ownership or beneficial property interest in the identifiable portion, if any, of Defendant Property A, as described in paragraph 11(A)(i)–(ix) of the Verified Complaint for Forfeiture In Rem (ECF No. 1), that consists of, represents, or is traceable to cryptocurrency credited to and held for my BTC-e customer account when BTC-e ceased operating in July 2017.

6. Defendant Property A consists of virtual currency described in the Complaint as held in BTC-e operating wallets as of July 25, 2017, including the assets and transfers specifically identified in subparagraphs 11(A)(i)–(ix). I do not assert ownership of all of Group A or of any specific number of coins absent supporting records.



RECEIVED
NOV 06 2026
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

7. To the extent that the assets credited to my BTC-e account included fiat-denominated funds or proceeds that can be traced to particular Defendant Property, I also assert a claimed interest, subject to proof and applicable law, in the corresponding identifiable portions of Defendant Properties B, D, E, and F described in paragraphs 11(B), 11(D), 11(E), and 11(F) of the Complaint. Those categories are:

(a) Defendant Property B: funds associated with Canton Business Corporation at FXOpen and/or XP Solutions Limited, including account X60FXPNXXF9776910001 and related accounts;

(b) Defendant Property D: funds associated with Canton Business Corporation and/or Stanislav Golovanov at FXOpen AU Pty Ltd., including account XX46FXPNXXG3750310001 and related accounts;

(c) Defendant Property E: funds held in NANO ABC LP accounts CZ6903000000000273635458, CZ6703000000000273635300, and CZ7803000000000273636266 at Československá obchodní banka; and

(d) Defendant Property F: funds held in NANO ABC LP account CZ0080000000000001939292223 at Česká spořitelna.

8. I do not presently possess account-level tracing evidence connecting my individual holdings to any of the bank accounts identified in paragraph 7. I do not claim an interest in the entirety of any listed account merely because it was used in BTC-e operations. My assertion concerning Groups B, D, E, and F is confined to a specific attributable portion, if such a portion is established by evidence and is legally cognizable.

9. I do not assert an independent interest in Defendant Property C, identified in paragraph 11(C) of the Complaint.

10. The exact asset types, quantities, wallet addresses, transfers, and amount of any legally cognizable interest cannot presently be stated with certainty because I do not have a complete historical account ledger or a reliable July 25, 2017 account statement.

## III. FACTUAL BASIS OF MY INTEREST

11. I funded my personal BTC-e account using my own money, including Russian-ruble-denominated payments in 2014 and 2015. I retain screenshots of certain deposits and an electronic-wallet transaction-history export generated on February 25, 2017. That export contains nine payments described as “BTC-E депозит” (BTC-E deposit), totaling RUB 89,000. These payment records do not, on their own, establish the precise amounts ultimately credited to my BTC-e account or my balance in July 2017.

12. From 2015 until July 2017, I bought and sold cryptocurrency through the BTC-e platform for my own account. A substantial part of the value of my account came from trading activity on the exchange, not solely from deposits.

13. I retained substantial cryptocurrency and/or fiat-denominated account holdings, to the best of my recollection, when BTC-e ceased operating in July 2017.

14. I used BTC-e to deposit, acquire, trade, and hold assets for my personal account. I did not intend my deposits and acquired holdings to be gifts to the exchange or its operators. I assert a property interest in the corresponding customer assets and identifiable proceeds to the extent recognized by applicable law.

15. I was not an operator or employee of BTC-e and did not knowingly participate in the unlawful conduct alleged in the Complaint.

16. The Complaint states that BTC-e servers seized in 2017 contained cryptocurrency wallets holding operating assets, customer deposits, and reserves (ECF No. 1 ¶ 110), and describes the updating of individual customers' BTC-e balances after receipt of funds (id. ¶ 169). These allegations provide context for my assertion but do not by themselves trace my account to any particular Defendant Property.

## IV. HISTORICAL BALANCE AND GOVERNMENT RECORDS

17. To the best of my recollection, the combined historical U.S.-dollar equivalent of the assets held in my BTC-e account around July 25, 2017 was approximately $46,000 to $52,000. This is an estimate of the portfolio value at that historical time, not an assertion that I held that amount as USD cash or that the full amount remained an uncompensated loss after later WEX activity and recoveries.

18. This amount is a good-faith estimate based on memory and historical prices. I do not possess a final screenshot or complete ledger verifying the precise asset composition, quantities, or account value at the time of BTC-e's shutdown.

19. On November 3, 2026, counsel for the United States provided a spreadsheet row for account ID 296303. It records money_usd as 0.00002065 and zero for the listed individual cryptocurrency and other currency fields, including money_btc, money_dsh, money_eth, money_ltc, money_rur, and money_eur. It also contains a separate field, total_balance, with the value 0.87006523.

20. The spreadsheet does not identify the date or time of the underlying data snapshot, explain the meaning or unit of total_balance, show historical trades, or identify balances reserved in open trading orders.

21. In an email dated November 3, 2026, Government counsel stated that the supplied records were the latest data in the Government's possession from the BTC-e servers, but that the Government could not guarantee the snapshot date or answer the additional questions raised.

22. In further correspondence, Government counsel confirmed that the United States possesses some additional BTC-e records, without identifying which categories of records are available for my account. In an email dated November 5, 2026, Government counsel stated that the data were derived from internal BTC-e records, that the Government could not itself reconstruct the total balance because the BTC-e database had not been maintained perfectly, and that the Government did not have records concerning WEX. I therefore cannot presently determine whether the BTC-e records available to the Government contain open orders, trade executions, deposits, withdrawals, or earlier account snapshots.

23. I have considered whether assets may have been committed to open trading orders and therefore omitted from displayed available balances. This is a possibility only; I cannot verify the accounting conventions of BTC-e's original database or conclude that this explains the figures supplied by the Government.

24. I cannot reconcile the spreadsheet with my recollection because its date, field definitions, and completeness remain unverified. I do not represent that the spreadsheet proves the value stated in paragraph 17; nor do I accept its unexplained total_balance field as a verified dollar valuation of my July 25, 2017 holdings.

## V. SUBSEQUENT WEX ACTIVITY AND RECOVERIES

25. After BTC-e ceased operations, I accessed the successor WEX platform. A portion of my account value was represented by WEX-issued tokens. I do not possess the agreement or terms presented during the BTC-e-to-WEX transition and cannot reliably recall the precise terms I may have accepted, including whether they addressed releases or waivers of claims.

26. I engaged in additional trading on WEX and withdrew some assets from that platform. I cannot now reliably reconstruct the exact dates, currencies, amounts, or U.S.-dollar equivalents of those withdrawals, or the complete history of trading on WEX. I acknowledge that I received some assets through WEX and do not claim otherwise.

27. To the best of my recollection, when WEX ceased functioning in 2018, assets with an approximate then-current U.S.-dollar equivalent value of $20,000 remained in my WEX account and became inaccessible. This is a memory-based estimate of the remaining WEX balance after trading and partial withdrawals, not a verified account statement. I cannot reliably reconstruct the exact composition of the remaining holdings, including the respective amounts of cryptocurrency, fiat-denominated balances, or WEX tokens.

28. The estimated WEX balance in paragraph 27 is distinct from my July 2017 BTC-e portfolio estimate in paragraph 17; it does not establish that any particular WEX asset was held in or seized from BTC-e by the United States. The two estimates cannot reliably be subtracted to determine my net loss, because of subsequent trades, withdrawals, price changes, and token valuations. I do not seek duplicate recovery of assets actually received through WEX, and I acknowledge that any such recoveries relevant to this Claim must be accounted for. Nor do I assume that WEX tokens constituted cash repayment at their stated face value. I assert only such interest in the specific Defendant Property as may be established under applicable law after considering any relevant transition terms and recoveries.

## VI. ADMINISTRATIVE PETITION AND SUPPORTING MATERIALS

29. On August 27, 2025, I submitted a separate Petition for Remission or Mitigation to the Department of Justice, tracking number 256M-829-CC9-46D, under the name Evgenij Glazunov. In that petition I reported a good-faith estimated pecuniary loss of about $46,000 and described my approximate July 2017 BTC-e portfolio value as $46,000 to $52,000. That petition did not separately quantify the subsequent WEX withdrawals and trading described above. I cannot presently calculate a verified net unrecovered amount attributable to BTC-e, as distinct from subsequent losses on WEX, without additional records.

30. The administrative petition does not replace this judicial Claim. I do not intend the submission of this Claim to withdraw that petition, and I do not seek duplicative relief.

31. Evidence available to me includes screenshots of ruble-denominated deposits, an electronic-wallet transaction-history export showing nine BTC-e-designated payments in 2014 and 2015, BTC-e login and authorization emails, BTC-e account-related correspondence, access to the email registered with the exchange, the October 30, 2026 Notice, the spreadsheet identifying my account, and the November 2026 correspondence from Government counsel.

32. I am prepared to provide relevant evidence and respond to appropriate requests concerning ownership of my account and claimed property interest. I have not included passwords, two-factor authentication secrets, or other security credentials in this public filing.

33. I understand that discovery is governed by the Federal Rules and the Court's orders and is not guaranteed merely because this Claim is filed. To the extent authorized, I seek the opportunity to establish whether account-specific records demonstrate the type, amount, and traceability of assets credited to my account.

## VII. REQUEST FOR RELIEF

**WHEREFORE, I respectfully request that the Court:**

34. Accept this Verified Claim for filing pursuant to Supplemental Rule G(5)(a);

35. Permit me to contest forfeiture of such identifiable portions of Defendant Property A, and, if established by evidence and applicable law, the corresponding identifiable portions of Defendant Properties B, D, E, and F, in which I have a legally cognizable interest;

36. Allow me to establish my asserted interest by appropriate evidence and procedures, including discovery to the extent permitted by the Court; and

37. Grant such relief with respect to any proven property interest as may be lawful and just, without duplicate recovery.

Respectfully submitted,

______________________________

Evgenii Glazunov, Claimant Pro Se

Residential and mailing address: Rua Lázaro de Oliveira Souza, 620, Bloco F, Apartamento 04

Ingleses do Rio Vermelho, Florianópolis, Santa Catarina 88058-573, Brazil

Telephone (Brazil): +55 48 98864-5912
Additional telephone (Russia): +7 960 830-99-12

Email: evgenij.glazunov@gmail.com

Date: November 6, 2026

**VERIFICATION UNDER 28 U.S.C. § 1746**

I, Evgenii Glazunov, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Statements expressly identified as estimates, recollections, or matters requiring verification are made in good faith on the basis and with the qualifications stated in this Claim.

Executed on November 6, 2026, in Florianópolis, Santa Catarina, Brazil.

______________________________

Evgenii Glazunov

**CERTIFICATE OF SERVICE**

I certify that on November 6, 2026, I served a true and correct copy of this Verified Claim on counsel for the United States by email, pursuant to their written consent to electronic service under Federal Rule of Civil Procedure 5(b)(2)(E), at the following addresses:

Joshua L. Sohn — joshua.sohn@usdoj.gov

Allison Ickovic — allison.ickovic@usdoj.gov

Executed on November 6, 2026, in Florianópolis, Santa Catarina, Brazil.

______________________________

Evgenii Glazunov, Claimant Pro Se